TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN









NO. 03-04-00248-CR






Santiago Juarez, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT

NO. 10,780, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 A jury convicted Santiago Juarez of murder. See Tex. Pen. Code Ann. § 19.02 (West
2003). The court assessed punishment at fifty-eight years in prison. Appellant contends that the
district court erred by denying his request to include an instruction on self-defense in the jury charge. 
Appellant also argues that the district court erred by admitting evidence of an alleged extraneous act
by appellant because the State failed to notify appellant of its intention to offer the evidence and
failed to prove beyond a reasonable doubt that it occurred. We will affirm the conviction.


BACKGROUND


 In 2003, appellant lived in a trailer located next to his uncle's two-story house. 
Appellant's uncle, Steve Juarez, lived in the house with several people, including appellant's
cousins: Jesse Hernandez and the victim, Samuel Juarez ("Sammy").

 The following summary is drawn from a composite of testimony taken at the guilt-
innocence phase of trial and appellant's written and videotaped statements. Sometime after midnight
on June 7, 2003, Sammy came home intoxicated. Appellant suspected that Sammy might be upset
with him, so he stayed in his bedroom in the trailer where he was "getting high." Appellant claims
that, although appellant wanted to avoid a confrontation, Sammy entered appellant's bedroom and
berated him, pinned him to his bed, hit him, then head-butted him in the forehead. 

 After breaking free, appellant ran to the house and awakened Steve Juarez. Appellant
asked Steve Juarez to tell Sammy to leave him alone. Sammy then entered Steve Juarez's room and
continued to berate appellant. Eventually, appellant stood (1) and Sammy grabbed him around the torso
and pinned him to the ground. Steve Juarez did not physically interfere, but he did tell Sammy to
behave. Sammy released appellant and left the room.

 Steve Juarez and appellant walked back to his bedroom in the trailer. After several
minutes had passed, Sammy re-entered appellant's bedroom and continued to berate him, although
no physical altercation took place. Sammy eventually left the bedroom, followed shortly by Steve
Juarez, leaving an agitated appellant alone in his room.

 Appellant claims that these confrontations left appellant so angry at Sammy that he
was "in a zone." Appellant states that he wanted to make Sammy hurt and cry, but that he did not
want him to die. After Sammy left, appellant smoked marijuana and ingested about four lines of
cocaine. He then took a 12-gauge shotgun from a closet in the trailer and loaded it with six rounds. 
He left the trailer, walked to the house, went to Hernandez's bedroom, and took Hernandez's wallet
and car keys without waking him. Appellant then walked down the hall to Sammy's bedroom door
and "stood there for a few minutes in a daze." Appellant then kicked the door in and shot Sammy
with the shotgun while Sammy was lying in his bed, apparently sleeping. Although appellant
recalled only one shot, Sammy sustained gunshot wounds to the left hand, left hip, and left side of
his chest. 

 Immediately after the shooting, appellant ran down the stairs and out into the yard,
where he dropped the shotgun. Appellant then took Hernandez's car and quickly drove away. 
Appellant eventually abandoned this car, then found a ride to Austin.

 Appellant's exit awakened Steve Juarez and Hernandez. Steve Juarez saw
Hernandez's car being driven away. Hernandez denied giving appellant permission to take his car.
They then discovered Sammy dead from the gunshot wound to his chest. 

 An anonymous caller reported that appellant was in a brown van in Austin. (2) The
Austin Police Department found the brown van and impounded it, but did not find appellant. Three
days after the shooting, appellant turned himself in to the Bastrop County Sheriff's Department. The
sheriff's department received another anonymous call stating that appellant's clothing was in the
impounded brown van, which appellant confirmed. In the van, the sheriff's investigator found
appellant's blood-stained clothing and a .357 Ruger Blackhawk magnum revolver; the record does
not specify whether the clothing and the revolver were found near each other. The revolver was not
tested for blood or fingerprints.

 At the guilt-innocence phase of the trial, appellant asked the district court to instruct
the jury to consider whether appellant acted in self-defense and was therefore justified in harming
Sammy. The district court refused, stating that the evidence did not warrant that instruction. The
jury found the defendant guilty of murder.

 During the punishment phase of the trial, the prosecution offered the revolver and
testimony about it into evidence, apparently to show that appellant had committed the extraneous
bad act of unlawful possession of a weapon. The district court admitted the revolver over appellant's
objection. The court instructed the jury that the revolver and the investigator's testimony relating
to it were to be considered proof of an extraneous bad act by appellant only if the jury believed
beyond a reasonable doubt that appellant had committed the act. The jury assessed appellant's
punishment at fifty-eight years in prison.


DISCUSSION


 Appellant raises three issues on appeal. First, he contends that the district court erred
at the guilt-innocence phase of the trial by denying his request to include an instruction on self-defense in the jury charge. Second, he contends that the district court erred by admitting evidence
of an alleged extraneous act because the State did not notify him of its intention to offer such
evidence. Last, he argues that the court erred in admitting the evidence of an alleged extraneous act
before it was proven beyond a reasonable doubt.


Denial of a self-defense instruction

 Appellant argues that the district court erred by denying his request to include an
instruction on self-defense within the jury charge. An accused is entitled to an instruction within the
written charge on every defensive issue properly requested by the defendant and raised by the
evidence regardless of whether the evidence is strong, weak, contradicted, unimpeachable, or
unbelievable. Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). However, when the
evidence fails to raise a defensive issue, the trial court commits no error in refusing a requested
instruction. Id. Evidence raises a defensive issue when, if the jury believed the evidence to be true,
a rational juror could accept it as sufficient to prove a defensive element. See Dyson v. State, 672
S.W.2d 460, 463 (Tex. Crim. App. 1984); Stefanoff v. State, 78 S.W.3d 496, 499 (Tex.
App.--Austin 2002, pet. ref'd). A defendant is entitled to an instruction on self-defense if the issue
is raised by the evidence, but if the evidence, viewed in the light most favorable to the defendant,
does not establish self-defense, the defendant is not entitled to an instruction on the issue. Ferrel
v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

 A person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself against the other's use or
attempted use of unlawful force. Tex. Pen. Code Ann. § 9.31(a) (West 2003). A person is justified
in using deadly force in these more limited circumstances: 


(1) if he would be justified in using force against the other under Section 9.31;


(2) if a reasonable person in the actor's situation would not have retreated; and 


(3) when and to the degree he reasonably believes the deadly force is immediately
necessary


 (A) to protect himself against the other's use or attempted use of unlawful
deadly force . . . .


Id. § 9.32. An appellant must raise some evidence on each element of the defense in order to warrant
a self-defense instruction. Halbert v. State, 881 S.W.2d 121, 124 (Tex. App.--Houston [1st Dist.]
1994, pet. ref'd). A key element of self-defense is that the use of force be immediately necessary. 
See Tex. Pen. Code Ann. §§ 9.31-.32; see also Smith v. State, 638 S.W.2d 208, 210 (Tex.
App.--Fort Worth 1982, no pet.) (affirming trial court's refusal to give self-defense instruction,
concluding no evidence showed immediate necessity to use force when victim stopped advancing
after appellant drew gun and appellant did not know whether victim was armed).

 The record in this case contains no evidence that appellant had any immediate need
to use deadly force to protect himself at the time of the shooting. According to appellant's written
statement, a measurable period of time elapsed between his altercations with Sammy, in which he
felt that his safety was threatened, and the shooting. Although Sammy instigated altercations with
appellant on the night of the incident, Sammy returned to his room in an adjacent dwelling and
apparently fell asleep. Meanwhile, appellant took the time to smoke marijuana, ingest four lines of
cocaine, find and load a 12-gauge shotgun, walk to the nearby dwelling, stop and take Hernandez's
car keys and wallet, and then approach Sammy's bedroom door. Appellant then "stood there for a
few minutes in a daze" before kicking in the door and shooting Sammy in bed.

 We conclude as a matter of law that the evidence adduced in this case did not warrant
a self-defense instruction. There was no showing that Sammy was an immediate threat to appellant
or that a reasonable person would not have retreated from any threat Sammy posed at that moment. 
Accordingly, the district court did not err in declining to instruct the jury regarding appellant's right
to self-defense. We overrule appellant's first point of error.


Admission of evidence of extraneous acts


 Appellant raises two complaints related to the district court's admission of evidence
about an alleged extraneous bad act. He complains that the district court erred by admitting such
evidence because the State failed to notify him of its intention to offer such evidence and because
the district court failed to make a threshold determination that the extraneous act was proven beyond
a reasonable doubt.

 In the punishment phase, the parties can offer evidence of any matter the court deems
relevant to sentencing, including but not limited to the prior criminal record of the defendant. Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2004-05). Upon timely request by the
defendant, the State must provide reasonable notice before trial that it intends to introduce evidence
of bad acts other than those arising in the same transaction as the instant offense; the notice must be
more specific for acts not resulting in a final conviction or probated or suspended sentence. Id.
§ (3)(g); Tex. R. Evid. 404(b). This notice requirement, like the rule of evidence on which it is
based, is a creature of statute and is not of constitutional dimension. See id.; see also Tex. R. Evid.
404(b); Umoja v. State, 965 S.W.2d 3, 11 (Tex. App.--Fort Worth 1997, no pet.) (op. on reh'g).

 The trial court is to make a threshold determination of whether "a jury could
reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." 
See Mann v. State, 13 S.W.3d 89, 94 (Tex. App.--Austin 2000), aff'd, 58 S.W.3d 132 (Tex. Crim.
App. 2001). The court is not required to conclude that the evidence proves the offense beyond a
reasonable doubt before admitting the evidence; that determination is for the jury to make as
"exclusive judge of the facts" based on the evidence admitted. See Mitchell v. State, 931 S.W.2d
950, 954 (Tex. Crim. App. 1996). There is no set method the court must use to make this threshold
determination; it could base the decision on an assessment of testimony and argument made at a
hearing outside the presence of the jury, an evaluation of a written proffer by the State, or some other
method. See Mann, 13 S.W.3d at 94; Arzaga v. State, 86 S.W.3d 767, 781 (Tex. App.--El Paso
2002, no pet.).

 To preserve a complaint for appellate review, complaining parties must ensure that
the record shows that they timely objected to the trial court, stating the grounds for their requested
ruling with sufficient specificity to make the trial court aware of the complaint. Tex. R. App. P.
33.1(a)(1)(A). The complaint on appeal must comport with that uttered at trial; otherwise, the
complaint is waived. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); Harnett v. State,
38 S.W.3d 650, 661 (Tex. App.--Austin 2000, pet. ref'd).

 Appellant complains of evidence relating to the alleged extraneous offense of
unauthorized use of a weapon--namely, the revolver found in the brown van that also contained
appellant's blood-stained clothes. The evidence relating to that offense was admitted through the
testimony of the sheriff's investigator. Just after examination of the investigator began, appellant
made a general objection, (3) which was followed by an unrecorded bench conference, after which
examination of the witness resumed without any indication of the nature of the objection, the
discussions in the conference, or any rulings therein. After some questions and answers about the
discovery of the revolver in the van, appellant objected to the admission of the revolver itself as "not
being relevant and its probative value is clearly outweighed by its prejudicial value; there's no link
to this evidence and my client." Appellant objected later when the State asked the investigator if
appellant's possession of the van containing the revolver would satisfy the elements of the offense
of unauthorized use of a weapon; appellant asserted that the investigator was not qualified to make
a legal conclusion. 

 None of these objections addresses either a lack of notice of the intention to offer
evidence of an extraneous bad act or the failure to make a threshold determination of admissibility. 
Appellant did not alert the court to these alleged procedural deficiencies by objecting to them. He
therefore waived the right to raise either complaint on appeal. See Tex. R. App. P. 33.1(a)(1);
Wilson, 71 S.W.3d at 349.

 It is possible that the notice and threshold-determination issues were discussed at the
bench conference, but the unrecorded bench conference gives us no basis on which to review the
court's action (or inaction) or appellant's complaint. An appellant must preserve error by objecting
to any failure by the court reporter to record a relevant proceeding, including a bench conference. 
Valle v. State, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003). The record does not show that
appellant took any of the steps by which the substance of an unrecorded bench conference can be
memorialized. See id.; Moore v. State, 999 S.W.2d 385, 398 (Tex. Crim. App. 1999). 

 We conclude that appellant has not preserved for appeal his complaints about the
failure to record the bench conference or the errors alleged in points of error two and three. See Tex.
R. App. P. 33.1(a)(1); see also Valle, 109 S.W.3d at 508-09 (unrecorded bench conference); Roethel
v. State, 80 S.W.3d 276, 280 (Tex. App.--Austin 2002, no pet.) (lack of notice); see also Malpica
v. State, 108 S.W.3d 374, 377-78 (Tex. App.--Tyler 2003, no pet.) (threshold determination);
Arzaga, 86 S.W.3d at 781 (threshold determination).


CONCLUSION


 Because appellant has not presented any reversible error, we affirm the judgment.




 __________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 11, 2005

Do Not Publish
1. It is unclear whether appellant stood to confront Sammy or to attempt to leave the room.
2. Although appellant was reportedly seen in Austin, other evidence indicated he fled to
Laredo after the shooting.
3. Appellant's counsel stated, "I'm going to object, Your Honor. May we approach, Your
Honor?"