# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00248-CR

**Santiago Juarez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
## NO. 10,780, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Santiago Juarez of murder. *See* Tex. Pen. Code Ann. § 19.02 (West 2003). The court assessed punishment at fifty-eight years in prison. Appellant contends that the district court erred by denying his request to include an instruction on self-defense in the jury charge. Appellant also argues that the district court erred by admitting evidence of an alleged extraneous act by appellant because the State failed to notify appellant of its intention to offer the evidence and failed to prove beyond a reasonable doubt that it occurred. We will affirm the conviction.

## BACKGROUND

In 2003, appellant lived in a trailer located next to his uncle's two-story house. Appellant's uncle, Steve Juarez, lived in the house with several people, including appellant's cousins: Jesse Hernandez and the victim, Samuel Juarez ("Sammy").

The following summary is drawn from a composite of testimony taken at the guilt-innocence phase of trial and appellant's written and videotaped statements. Sometime after midnight on June 7, 2003, Sammy came home intoxicated. Appellant suspected that Sammy might be upset with him, so he stayed in his bedroom in the trailer where he was "getting high." Appellant claims that, although appellant wanted to avoid a confrontation, Sammy entered appellant's bedroom and berated him, pinned him to his bed, hit him, then head-butted him in the forehead.

After breaking free, appellant ran to the house and awakened Steve Juarez. Appellant asked Steve Juarez to tell Sammy to leave him alone. Sammy then entered Steve Juarez's room and continued to berate appellant. Eventually, appellant stood[1] and Sammy grabbed him around the torso and pinned him to the ground. Steve Juarez did not physically interfere, but he did tell Sammy to behave. Sammy released appellant and left the room.

Steve Juarez and appellant walked back to his bedroom in the trailer. After several minutes had passed, Sammy re-entered appellant's bedroom and continued to berate him, although no physical altercation took place. Sammy eventually left the bedroom, followed shortly by Steve Juarez, leaving an agitated appellant alone in his room.

Appellant claims that these confrontations left appellant so angry at Sammy that he was "in a zone." Appellant states that he wanted to make Sammy hurt and cry, but that he did not want him to die. After Sammy left, appellant smoked marijuana and ingested about four lines of

---

[1] It is unclear whether appellant stood to confront Sammy or to attempt to leave the room.

cocaine. He then took a 12-gauge shotgun from a closet in the trailer and loaded it with six rounds. He left the trailer, walked to the house, went to Hernandez's bedroom, and took Hernandez's wallet and car keys without waking him. Appellant then walked down the hall to Sammy's bedroom door and "stood there for a few minutes in a daze." Appellant then kicked the door in and shot Sammy with the shotgun while Sammy was lying in his bed, apparently sleeping. Although appellant recalled only one shot, Sammy sustained gunshot wounds to the left hand, left hip, and left side of his chest.

Immediately after the shooting, appellant ran down the stairs and out into the yard, where he dropped the shotgun. Appellant then took Hernandez's car and quickly drove away. Appellant eventually abandoned this car, then found a ride to Austin.

Appellant's exit awakened Steve Juarez and Hernandez. Steve Juarez saw Hernandez's car being driven away. Hernandez denied giving appellant permission to take his car. They then discovered Sammy dead from the gunshot wound to his chest.

An anonymous caller reported that appellant was in a brown van in Austin.[2] The Austin Police Department found the brown van and impounded it, but did not find appellant. Three days after the shooting, appellant turned himself in to the Bastrop County Sheriff's Department. The sheriff's department received another anonymous call stating that appellant's clothing was in the impounded brown van, which appellant confirmed. In the van, the sheriff's investigator found appellant's blood-stained clothing and a .357 Ruger Blackhawk magnum revolver; the record does

---

[2] Although appellant was reportedly seen in Austin, other evidence indicated he fled to Laredo after the shooting.

not specify whether the clothing and the revolver were found near each other. The revolver was not tested for blood or fingerprints.

At the guilt-innocence phase of the trial, appellant asked the district court to instruct the jury to consider whether appellant acted in self-defense and was therefore justified in harming Sammy. The district court refused, stating that the evidence did not warrant that instruction. The jury found the defendant guilty of murder.

During the punishment phase of the trial, the prosecution offered the revolver and testimony about it into evidence, apparently to show that appellant had committed the extraneous bad act of unlawful possession of a weapon. The district court admitted the revolver over appellant's objection. The court instructed the jury that the revolver and the investigator's testimony relating to it were to be considered proof of an extraneous bad act by appellant only if the jury believed beyond a reasonable doubt that appellant had committed the act. The jury assessed appellant's punishment at fifty-eight years in prison.

## DISCUSSION

Appellant raises three issues on appeal. First, he contends that the district court erred at the guilt-innocence phase of the trial by denying his request to include an instruction on self-defense in the jury charge. Second, he contends that the district court erred by admitting evidence of an alleged extraneous act because the State did not notify him of its intention to offer such evidence. Last, he argues that the court erred in admitting the evidence of an alleged extraneous act before it was proven beyond a reasonable doubt.

4

**Denial of a self-defense instruction**

Appellant argues that the district court erred by denying his request to include an instruction on self-defense within the jury charge. An accused is entitled to an instruction within the written charge on every defensive issue properly requested by the defendant and raised by the evidence regardless of whether the evidence is strong, weak, contradicted, unimpeachable, or unbelievable. *Muniz v. State,* 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). However, when the evidence fails to raise a defensive issue, the trial court commits no error in refusing a requested instruction. *Id.* Evidence raises a defensive issue when, if the jury believed the evidence to be true, a rational juror could accept it as sufficient to prove a defensive element. *See Dyson v. State,* 672 S.W.2d 460, 463 (Tex. Crim. App. 1984); *Stefanoff v. State,* 78 S.W.3d 496, 499 (Tex. App.—Austin 2002, pet. ref'd). A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, but if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. Tex. Pen. Code Ann. § 9.31(a) (West 2003). A person is justified in using deadly force in these more limited circumstances:

(1)  if he would be justified in using force against the other under Section 9.31;

(2)  if a reasonable person in the actor's situation would not have retreated; and

(3)  when and to the degree he reasonably believes the deadly force is immediately necessary

    (A)  to protect himself against the other's use or attempted use of unlawful deadly force . . . .

*Id*. § 9.32. An appellant must raise some evidence on *each* element of the defense in order to warrant a self-defense instruction. *Halbert v. State,* 881 S.W.2d 121, 124 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). A key element of self-defense is that the use of force be immediately necessary. *See* Tex. Pen. Code Ann. §§ 9.31-.32; *see also Smith v. State*, 638 S.W.2d 208, 210 (Tex. App.—Fort Worth 1982, no pet.) (affirming trial court's refusal to give self-defense instruction, concluding no evidence showed immediate necessity to use force when victim stopped advancing after appellant drew gun and appellant did not know whether victim was armed).

The record in this case contains no evidence that appellant had any immediate need to use deadly force to protect himself at the time of the shooting. According to appellant's written statement, a measurable period of time elapsed between his altercations with Sammy, in which he felt that his safety was threatened, and the shooting. Although Sammy instigated altercations with appellant on the night of the incident, Sammy returned to his room in an adjacent dwelling and apparently fell asleep. Meanwhile, appellant took the time to smoke marijuana, ingest four lines of cocaine, find and load a 12-gauge shotgun, walk to the nearby dwelling, stop and take Hernandez's car keys and wallet, and then approach Sammy's bedroom door. Appellant then "stood there for a few minutes in a daze" before kicking in the door and shooting Sammy in bed.

We conclude as a matter of law that the evidence adduced in this case did not warrant a self-defense instruction. There was no showing that Sammy was an immediate threat to appellant

6

or that a reasonable person would not have retreated from any threat Sammy posed at that moment. Accordingly, the district court did not err in declining to instruct the jury regarding appellant's right to self-defense. We overrule appellant's first point of error.

**Admission of evidence of extraneous acts**

Appellant raises two complaints related to the district court's admission of evidence about an alleged extraneous bad act. He complains that the district court erred by admitting such evidence because the State failed to notify him of its intention to offer such evidence and because the district court failed to make a threshold determination that the extraneous act was proven beyond a reasonable doubt.

In the punishment phase, the parties can offer evidence of any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2004-05). Upon timely request by the defendant, the State must provide reasonable notice before trial that it intends to introduce evidence of bad acts other than those arising in the same transaction as the instant offense; the notice must be more specific for acts not resulting in a final conviction or probated or suspended sentence. *Id*. § (3)(g); Tex. R. Evid. 404(b). This notice requirement, like the rule of evidence on which it is based, is a creature of statute and is not of constitutional dimension. *See id*.; *see also* Tex. R. Evid. 404(b); *Umoja v. State*, 965 S.W.2d 3, 11 (Tex. App.—Fort Worth 1997, no pet.) (op. on reh'g).

The trial court is to make a threshold determination of whether "a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *See Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim.

7

App. 2001). The court is not required to conclude that the evidence proves the offense beyond a reasonable doubt before admitting the evidence; that determination is for the jury to make as "exclusive judge of the facts" based on the evidence admitted. *See Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996). There is no set method the court must use to make this threshold determination; it could base the decision on an assessment of testimony and argument made at a hearing outside the presence of the jury, an evaluation of a written proffer by the State, or some other method. *See Mann*, 13 S.W.3d at 94; *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.).

To preserve a complaint for appellate review, complaining parties must ensure that the record shows that they timely objected to the trial court, stating the grounds for their requested ruling with sufficient specificity to make the trial court aware of the complaint. Tex. R. App. P. 33.1(a)(1)(A). The complaint on appeal must comport with that uttered at trial; otherwise, the complaint is waived. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Harnett v. State*, 38 S.W.3d 650, 661 (Tex. App.—Austin 2000, pet. ref'd).

Appellant complains of evidence relating to the alleged extraneous offense of unauthorized use of a weapon—namely, the revolver found in the brown van that also contained appellant's blood-stained clothes. The evidence relating to that offense was admitted through the testimony of the sheriff's investigator. Just after examination of the investigator began, appellant made a general objection,[3] which was followed by an unrecorded bench conference, after which

---

[3] Appellant's counsel stated, "I'm going to object, Your Honor. May we approach, Your Honor?"

examination of the witness resumed without any indication of the nature of the objection, the discussions in the conference, or any rulings therein. After some questions and answers about the discovery of the revolver in the van, appellant objected to the admission of the revolver itself as "not being relevant and its probative value is clearly outweighed by its prejudicial value; there's no link to this evidence and my client." Appellant objected later when the State asked the investigator if appellant's possession of the van containing the revolver would satisfy the elements of the offense of unauthorized use of a weapon; appellant asserted that the investigator was not qualified to make a legal conclusion.

None of these objections addresses either a lack of notice of the intention to offer evidence of an extraneous bad act or the failure to make a threshold determination of admissibility. Appellant did not alert the court to these alleged procedural deficiencies by objecting to them. He therefore waived the right to raise either complaint on appeal. *See* Tex. R. App. P. 33.1(a)(1); *Wilson*, 71 S.W.3d at 349.

It is possible that the notice and threshold-determination issues were discussed at the bench conference, but the unrecorded bench conference gives us no basis on which to review the court's action (or inaction) or appellant's complaint. An appellant must preserve error by objecting to any failure by the court reporter to record a relevant proceeding, including a bench conference. *Valle v. State*, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003). The record does not show that appellant took any of the steps by which the substance of an unrecorded bench conference can be memorialized. *See id.*; *Moore v. State*, 999 S.W.2d 385, 398 (Tex. Crim. App. 1999).

9

We conclude that appellant has not preserved for appeal his complaints about the failure to record the bench conference or the errors alleged in points of error two and three. *See* Tex. R. App. P. 33.1(a)(1); *see also Valle*, 109 S.W.3d at 508-09 (unrecorded bench conference); *Roethel v. State*, 80 S.W.3d 276, 280 (Tex. App.—Austin 2002, no pet.) (lack of notice); *see also Malpica v. State*, 108 S.W.3d 374, 377-78 (Tex. App.—Tyler 2003, no pet.) (threshold determination); *Arzaga*, 86 S.W.3d at 781 (threshold determination).

## CONCLUSION

Because appellant has not presented any reversible error, we affirm the judgment.

_____

_____ W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 11, 2005

Do Not Publish

10