# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-0016-CR

**Steven Ray Cline, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
## NO. 9451, HONORABLE CHARLES J. HEARN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Steven Ray Cline appeals a felony conviction for driving while intoxicated as enhanced by two prior convictions. After appellant was convicted by a jury, the jury assessed punishment at twenty years' confinement and a $10,000 fine. In four points of error, appellant challenges the denial of his motion for continuance and the admission of evidence relating to his prior convictions and extraneous conduct. For the reasons that follow, we affirm the conviction.

Because appellant does not challenge the sufficiency of the evidence, only a recitation of the facts relevant to the issues on appeal is necessary. Appellant was arrested on January 17, 2002, for driving while intoxicated when his vehicle collided with another vehicle. Appellant's vehicle struck the rear of the other vehicle, which was stopped in a left-hand lane waiting for a break in traffic to make a left turn. At the scene, appellant acknowledged to law enforcement personnel that he was driving the vehicle that rear-ended the other vehicle. Appellant also told Department of

Public Safety trooper Chad Pernecka that his name was Royce Neal Cline, that he was alone in the vehicle, and that he had not been drinking. Because appellant smelled of alcoholic beverages, his balance was unsteady, his eyes were red and glassy, and he was belligerent, Pernecka began to administer standard sobriety tests. Although appellant had earlier declined medical treatment, he told the trooper he needed a doctor and wanted to be taken to the hospital.

Appellant was transported to the emergency room of Seton Highland Lakes Hospital by EMS. The registered nurse who treated appellant testified that he complained of knee pain but was uncooperative in his treatment. He removed his splints and intravenous needle, and left the emergency room before he could be treated and discharged. Appellant was arrested in the parking lot, preparing to leave as a passenger in another individual's vehicle. He was booked into the jail giving his brother's name, Royce Cline.

At trial, appellant was present for *voir dire* and jury selection but failed to appear when trial commenced. He was not present for the remainder of the trial. The jury convicted appellant of third-degree felony driving while intoxicated, as enhanced by prior convictions. He was later apprehended and the trial court imposed sentence as assessed by the jury. This appeal followed.

**DISCUSSION**

*Motion for Continuance*

The basis for appellant's motion for continuance was that the State had insufficiently put appellant on notice of the State's intent to seek an affirmative finding of a deadly weapon, his witnesses "are currently unavailable," he had inadequate time to prepare for trial, and he wished to discharge his defense attorney. He filed his first motion for continuance four days before the

commencement of trial. The trial court denied the motion on the same date. Appellant reurged his motion on the same day his trial was scheduled to commence. The trial court again denied the motion.

We review the trial court's denial of a motion for continuance for abuse of discretion. *Ross v. State*, 133 S.W.3d 618, 629 (Tex. Crim. App. 2004). To preserve error, a motion for continuance must be sworn and in writing. *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). Article 29.06 provides that when a motion for continuance is based on the absence of a witness, the written motion must state, among other information, the witness's name and residence, the diligence used to procure the witness's attendance, and the material facts expected to be proved by the witness. Tex. Code Crim. Proc. Ann. art. 29.06 (West 2006). Appellant's written motion contained none of the required witness information.

Moreover, diligence in the timeliness of a motion for continuance is required as well as diligence in procuring the presence of witnesses. *Id*.; *Dewberry*, 4 S.W.3d at 756. Appellant's motion was filed four days before trial, did not identify the witnesses that were unable to appear nor show any diligence to support the motion. Nor did he assert the respect in which the witnesses were unavailable or that their residences were unknown. Although appellant also asserted that the State did not put him on notice of its intent to seek an affirmative finding of a deadly weapon, that he had inadequate time to prepare for trial, and that he further wished to discharge his attorney, the motion failed as well to demonstrate any support for these bare assertions.

On the first day of trial, appellant reurged his motion, arguing that, since the motion was denied, his defense attorney had actually issued a subpoena for a witness who was present in

3

court, but could not locate an individual known as James, or Stretch, who was a material witness. On the second day of trial after jury selection but before the jury had been sworn, appellant failed to appear in court. His counsel orally renewed the motion for continuance to investigate appellant's disappearance. The trial court denied both motions. Even if we were to consider the oral motions, they do not satisfy article 29.06. The application for subpoenas came only four days before trial and counsel waited until the State had rested to seek a writ of attachment.[1] Appellant has failed to make a showing of any diligence used in locating or obtaining the availability of witnesses.

Moreover, appellant failed to show the relevance or materiality of the absent witness's testimony, and has therefore not shown actual prejudice from the denial of the continuance. *See Ross*, 133 S.W.3d at 629; *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002); *see also Heiselbetz v. State*, 906 S.W.2d 500, 511-12 (Tex. Crim. App. 1995) (to establish an abuse of discretion based on denial of a continuance, defendant must show he was prejudiced by his counsel's inadequate preparation time). We conclude that the trial court did not abuse its discretion in denying appellant's motion for continuance. We overrule appellant's first point of error.

### *Admission of Evidence*

In his remaining points of error, appellant complains of the admission of evidence of prior convictions (State's Exhibits 7 and 9), medical records showing the results of a blood-alcohol test and reciting that appellant "was arrested in parking lot" and was "escorted to police car" (State's

---

[1] The witness for whom counsel sought a writ of attachment was present in court at the beginning of the trial.

4

Exhibit 10), a copy of appellant's driving record (State's Exhibit 6), and testimony by a fingerprint expert linking pen packet evidence to appellant to establish his identity.

We review a trial court's decision on the admissibility of evidence for an abuse of discretion; a trial court abuses its discretion when its decision falls outside "the zone of reasonable disagreement." *Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001); *see also Sorto v. State*, 173 S.W.3d 469, 491 (Tex. Crim. App. 2005). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

Any error in admitting evidence must have been preserved by a proper objection and ruling. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). The objection must have been timely and include the proper basis for the objection unless the particular ground was apparent from the context. *Lankston v. State*, 827 S.W.2d 907, 908-09 (Tex. Crim. App. 1992). Specific objections are required to preserve error in order to afford the trial court the opportunity to rule and allow the opposing counsel an opportunity to remedy the defect and supply other testimony. Rule 33.1(a)(1)(A) requires that an objection state the grounds for the ruling being sought "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). In *Lankston*, the court held that, under the predecessor to Rule 33.1, "no technical considerations or form of words" are necessary and that all

that is required is to "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston*, 827 S.W.2d at 909. Making the trial court aware of the complaint requires that both the grounds and what is being objected to be apparent. *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g).

### 1. *Prior convictions*

In his second point of error, appellant complains that the State included evidence of his prior convictions beyond that necessary to show the existence of a prior conviction as an element of the offense and that the evidence was prejudicial in violation of Texas Rule of Evidence 403. Specifically, appellant contends that because the exhibits contained a finding that appellant had violated the terms of his probation and was ordered to serve a term of 30 days in jail (Exhibit 7) and included terms of a plea bargain imposing a five-year sentence (Exhibit 9), both in prior DWI convictions, the trial court erred in admitting these portions of the records.

Appellant complains that the probative value of the exhibits was greatly outweighed by the prejudicial effect of admitting them into evidence. Without citing authority, appellant asserts that "the fact that a prior conviction was a felony, the terms of any plea bargain, the sentences imposed, and whether probation was granted, violated, or revoked do nothing to make a consequential fact more or less probable, and are thus irrelevant and prejudicial, and the trial court erred in admitting this evidence." By making only conclusory assertions in his brief, appellant has failed to meet this burden.

6

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Because only unfairly prejudicial evidence is excluded, trial courts "should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Montgomery*, 810 S.W.2d at 389. As long as the trial court operates within the boundaries of its discretion, its decision will not be disturbed on appeal. *McFarland v. State*, 845 S.W.2d 824, 837 (Tex. Crim. App. 1992); *Montgomery*, 810 S.W.2d at 391. Moreover, the opponent of a piece of evidence, appellant in this case, has the burden to demonstrate not only the prejudicial nature of the evidence but also that these negative attributes substantially outweigh any probative value. *Montgomery*, 810 S.W.2d at 377.

The State had the burden to prove, beyond a reasonable doubt, its enhancement paragraph as alleged in the charging instrument. *See Flowers v. State*, 220 S.W.3d 919, 925 (Tex. Crim. App. 2007); *Williams v. State*, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). While no required method of proof is set out by statute, a judgment and sentence, or their functional equivalent, may suffice. *See Mitchell v. State*, 848 S.W.2d 917, 918-19 (Tex. App.—Texarkana 1993, pet. ref'd) (finding that an abstract of judgment was the functional equivalent of a judgment and sentence).

A prior conviction can be proven by the introduction of a "pen packet," which is the document compiled by a prison official based upon other primary documentation that he has received from the clerk of the convicting court. *Flowers*, 220 S.W.3d at 923 n.14; *Cuddy v. State*, 107 S.W.3d 92, 96 (Tex. App.—Texarkana 2003, no pet.). A pen packet is admissible to show a defendant's prior criminal record provided it is properly authenticated. *Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991). Certification by the record clerk of the Texas Department of Criminal Justice, Institutional Division constitutes proper authentication of the copies of the judgment and sentence found in a pen packet. *Id.* Under the analysis set forth in *Beck v. State*, 719 S.W.2d 205, 209-10 (Tex. Crim. App. 1986), a pen packet must not only prove the existence of a conviction but also link that conviction to the defendant. The *Beck* court reasoned,

> We have consistently held that a prior conviction alleged for enhancement or a conviction as a part of prior criminal record of a defendant under Article 37.07 . . . may be established by certified copies of a judgment and a sentence and authenticated copies of the Texas Department of Corrections records including fingerprints, supported by expert testimony identifying them as identical with known prints of the defendant.

*Id*. at 209. The court held admissible the certified copies of a judgment and sentence and the authenticated records of the Texas Department of Corrections. *Id*. at 210-11.

In this instance, both challenged exhibits were certified and authenticated as required by Texas Rules of Evidence 901 and 902. *See* Tex. R. Evid. 901 (authentication) and 902(4) (self-authentication of certified copies of public records). Appellant does not challenge the certification of the records but that they contain prejudicial information.

State's Exhibit 7 shows evidence of a prior conviction and includes a copy of the judgment and order of probation as well as an order for commitment to the county jail, which contains a finding that appellant had violated the terms of his probation and was ordered to serve a term of 30 days in jail. State's Exhibit 9 also shows evidence of a prior conviction and includes the judgment containing the terms of a plea bargain and the sentence imposed, i.e., five years' confinement and a fine of $500. Appellant has cited us to no authority that this information included in a pen packet or certified court records is inadmissible. Moreover, appellant did not offer to stipulate to prior DWI convictions necessary to prove a felony DWI nor did he seek to redact any information he believed to be unduly prejudicial. *See Tamez v. State*, 11 S.W.3d 198, 202-03 (Tex. Crim. App. 2000) (State cannot refuse defendant's offer to stipulate to prior DWI convictions necessary to prove a felony DWI). The trial court did not abuse its discretion by admitting the pen packets relating to appellant's prior convictions. We overrule appellant's second point of error.

### 2. Medical Records

Appellant complains in his third point of error that the medical records introduced at trial improperly reference the results of a blood-alcohol test performed by hospital personnel and are inadmissible hearsay and also inadmissible under Texas Rule of Evidence 403. In his fourth point of error, although appellant contended generally at trial that the exhibit "contains prejudicial statements in here" without particularizing, on appeal he contends that the statements in the medical-records exhibit, i.e., that appellant "was arrested in parking lot" and was "escorted to police car," were inadmissible under Rule 403.

9

State's Exhibit 10, the medical-records exhibit, consisted of an affidavit by the custodian of records for Seton Highland Lakes Medical Center, who also testified at trial, averring that the attached records were true and correct copies of hospital records and kept in the regular course of business; emergency room records; a consent for treatment; a physician record; and progress notes. On one page of the records, notes indicate that appellant took his "IV out," left before being discharged, and "was arrested in parking lot (wife was driving)." At another point, the records indicate that the patient is "uncooperative," "police here," "pt escorted to police car via WC," "pt refused to sign" instructions given verbally by nurse and a further indication that appellant was in stable condition.

After Bonny Woods, Seton's health information management manager and document custodian, testified and the documents were admitted over appellant's objection that the records were generally prejudicial, contained hearsay, and that the State had failed to establish a proper predicate for business records, Carol Bassy, the hospital's medical technologist, testified to her duties "receiving, collecting, maintaining and testing samples of patients' blood." She also testified that she received the sample of appellant's blood and tested it. She testified to the results of the test that showed appellant's blood-alcohol content and that the test was documented in the medical records that contained her initials and the date on which the test was conducted. Both Woods, as the custodian of records, and Bassy, as the witness who performed the test, were qualified to testify to the authenticated records. Tex. R. Evid. 902(10)(a) (business records accompanied by affidavit); 803(6) (business records not excluded when meet criteria as shown by testimony of custodian or other "qualified witness"); *Montoya v. State*, 832 S.W.2d 138, 141 (Tex. App.—Fort Worth 1992,

10

no pet.) (noting that even if witness who authenticated results of urine drug screening was not custodian of records, he appeared to be a "qualified witness," as used in former Rule 803(6)). In any event, because the results of the complained-of blood-alcohol test came into evidence through Bassy's testimony without objection, any error in the admission of the exhibit is cured. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

As to the statements regarding appellant being arrested in the parking lot and escorted to the police car, appellant objects on appeal that the statements are hearsay and "since they have no probative value as to his guilt, they are unduly prejudicial and should have been excluded pursuant to Tex. R. Evid. 403." In order to preserve error for appellate review, there must be a timely and specific trial objection. *See* Tex. R. App. P. 33.1; *DeBlanc v. State*, 799 S.W.2d 701, 718 (Tex. Crim. App. 1990). Moreover, the complaint on appeal must comport with the trial objection, or nothing is presented for review. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). When an exhibit contains both admissible and inadmissible material, the objection must specifically refer to the material deemed objectionable. *Beltran v. State*, 728 S.W.2d 382, 387 (Tex. Crim. App. 1987); *Hernandez*, 599 S.W.2d at 617. In *Hernandez*, the Texas Court of Criminal Appeals held that failure to specifically refer to the inadmissible parts of a pen packet introduced at the punishment phase failed to preserve the error in admitting the entire pen packet. 599 S.W.2d at 617.

Appellant was required to make an objection with sufficient specificity that the trial court could be aware of what he was complaining about. Because the initial hearsay objection was to the entirety of the medical records that are State's Exhibit 10, the objection was too general and insufficient to inform the trial court of the basis of the objection. Nor can we say that the inadmissible material which forms the basis of the objection is apparent from the context. The medical records contained approximately ten pages of entries properly authenticated as business records, and the complained-of evidence consists of two brief phrases. We conclude the error was not preserved.

Moreover, even assuming appellant's hearsay objection was sufficient to preserve error, given the context of the statements in the exhibit and the testimony of the treating doctor, these statements were made by medical personnel for the purpose of diagnosis and treatment. *See* Tex. R. Evid. 803(4). Although appellant complained of certain injuries, his actions were inconsistent with any desire for treatment.

Greg Meador testified that he was the emergency room physician on duty January 17, 2002, when appellant first arrived at the hospital at approximately 8:00 p.m. on a stretcher. Meador testified that appellant complained that his "leg hurt." When Meador ordered an x-ray on both of appellant's knees, appellant insisted there was nothing wrong with him. As Meador was completing his paperwork, he learned that appellant had left the hospital. He testified in response to questioning by the prosecutor:

Q.     Was he discharged at that point?

A.     No, he was not.

Q. Why not?

A. Well, sometime very quickly after me sitting down to fill out my paperwork, somebody said where is that guy on the stretcher? I turned around, he was on one of our hall stretchers, and he was gone. And, you know, essentially I was normally going to fill out discharge instructions, recommend whatever I recommended, and he was gone. And I think there were officers in the department at that time and they had bolted out the back door and then I heard a little bit later that they caught him in the parking lot.

This testimony came into evidence without objection. In connection with this initial treatment, the nurse's notes on State's Exhibit 10 state that appellant left without being discharged and was arrested in the parking lot. Meador testified that appellant returned to the emergency room later that evening for additional treatment.[2] In response to questioning, Meador testified also without objection:

A. He was very theatrical. Again, I see on my notes—it seems like I remember him saying like I can't use my left side, I'm paralyzed. When I was doing the testing there was no indication that there was any problem with his ability to move his muscles, his strength was appropriate. I essentially said that, sir, you know, I didn't come up with anything wrong the first time I saw you so I really don't think—you know, I don't find anything different at this point. The only thing I can tell you is he was a little bit more peculiar in his behavior at that time.

Meador then ordered a blood test to assess appellant's alcohol level and checked his motor functions. After determining it was safe to return appellant to jail, Meador wrote that appellant "was able to stand and was discharged in good condition."

---

[2] Trooper Pernecka testified that after he advised appellant of his rights and requested a breath or blood specimen, appellant "basically kind of flipped out. I mean, he fell on the floor, said he needed a doctor. We went to the jail personnel and said he's requesting a doctor, he's having some type of allergic reaction, his knee is hurting. So we called EMS at that point, brought EMS in and he was transported back to the hospital."

13

That appellant was "escorted to police car" following his return to the emergency room is consistent with admission of the evidence for diagnosis and treatment. In any event, appellant did not demonstrate that the probative value of the evidence was outweighed by its prejudicial nature. We cannot say that the trial court abused its discretion in admitting the statements which were included within State's Exhibit 10.

### 3. DPS Driving Record

Appellant also complains in his third point of error that the trial court erred in admitting a copy of appellant's DPS driving record because it was hearsay and therefore inadmissible under Texas Rule of Evidence 802. As a certified copy of a public record, State's Exhibit 6 falls squarely within Texas Rule of Evidence 803(8) and its admission does not constitute inadmissible hearsay. Tex. R. Evid. 803(8); *see, e.g.*, *Flores v. State*, 139 S.W.3d 61, 64 (Tex. App.—Texarkana 2004, pet. ref'd); *Gibson v. State*, 952 S.W.2d 569, 572 (Tex. App.—Fort Worth 1997, pet. ref'd); *Smith v. State*, 895 S.W.2d 449, 454-55 (Tex. App.—Dallas 1995, pet. ref'd). We cannot say that the trial court abused its discretion in overruling appellant's hearsay objection and admitting State's Exhibit 6.

### 4. Fingerprint Expert Testimony

As part of his third point of error, appellant also challenges the admission of testimony by a fingerprint expert who compared appellant's booking fingerprints with other fingerprints to establish his identity. Appellant complains that the trial court erred in allowing a fingerprint expert to testify to appellant's identity based on documents not yet in evidence, i.e., the

14

pen packets that were State's Exhibits 7 and 9. He urges that "such evidence, being hearsay and unfairly prejudicial, is inadmissible."

Because appellant identified himself when admitted at the hospital and the jail as Royce Neal Cline, rather than Steven Ray Cline, appellant's identity was relevant. At his arrival at the jail, Henry Nolan, the chief criminal investigator for the district attorney's office and a fingerprint expert, was summoned to assist in determining appellant's identity. Nolan testified that four or five times a year he is called to the jail to identify an inmate through fingerprint analysis. At trial in response to questioning by the prosecutor as to what documents he reviewed to determine appellant's identity, Nolan testified:

A. I reviewed the Burnet County arrest report. I've reviewed a document which is the Department of Public Safety driving record report, including driver's license fingerprint. I've reviewed a document that is entitled a penitentiary packet from the Texas Department of Criminal Justice Institutional Division and I've reviewed a judgment out of County Court.

Q. And—go ahead, I'm sorry.

A. And State's Exhibit 3.

Q. And in reviewing those documents, were you able to analyze a known print certified as Steven Ray Cline's print?

[Defense Counsel]: Your Honor, that calls for hearsay. Some document that's not in this courtroom and you're asking a known print, that's an element the State must prove up. Objection to lack of predicate, best evidence and hearsay.

The Court: Those objections are overruled.

\* \* \*

15

Q. Were you able to identify and analyze a print?

A. Yes, sir, I analyzed prints on all those documents.

Q. Did you compare them with what is State's 3, which is in evidence, that booking card?

A. Yes, sir, I did.

Q. Were you able to make a determination as to the identity of the person that was booked-in and printed on the booking card from the jail and those other documents?

A. Yes, sir, I was.

Q. What's your conclusion?

A. That all the prints came from Steven Ray Cline.

Q. And is that the same individual that you identified in State's 2A with that booking card?

A. Yes.

[Defense Counsel]: Object, Your Honor. Lack of predicate, hearsay, best evidence rule.

The Court: Overruled.

A. Yes, Sir.

Appellant does not identify any of the documents referred to that were not admitted into evidence. Because all of the documents were admitted into evidence, we cannot say the trial court abused its discretion in allowing the fingerprint expert to testify, comparing the various identified prints with appellant's known prints at the time of booking, to determine his identity. *See Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1987) (op. on reh'g) (allowing and discussing

use of pen packets as proof of defendant's identity). We overrule appellant's remaining points of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   March 26, 2008

Do Not Publish

17