Yosvanis VALLE, Appellant,

v.

The STATE of Texas.

No. 74137.

Court of Criminal Appeals of Texas.

July 2, 2003.

Kenneth P. Mingledorff, Houston, for Appellant.

Eric Kugler, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KELLER, P.J., delivered the opinion of the Court, in which MEYERS, WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

Appellant was convicted in April 2001 of capital murder.[1] Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure art. 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death.[2] Direct appeal to this Court is automatic.[3] We shall affirm.

In his first point of error, appellant claims the Texas death penalty scheme is unconstitutional because it allows for the

---

1. *See* TEX. PEN. CODE § 19.03(a).

2. *See* TEX. CODE CRIM. PROC., art. 37.071 § 2(g).

3. *See* TEX. CODE CRIM. PROC., art. 37.071 § 2(h).

application of the death penalty without providing meaningful appellate review of any of the special issues giving rise to the sentence of death. The first special issue asks whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.[4] Appellant claims that the jury's finding of future dangerousness is not afforded meaningful appellate review because under the *Jackson*[5] standard every capital murder has circumstances of the offense which can support a finding of future dangerousness. We have held that the circumstances of an offense can be sufficient to sustain an affirmative finding as to a defendant's future dangerousness.[6] But our holding did not imply that the circumstances of an offense will always support a finding of future dangerousness. Because there are situations in which the circumstances of the offense alone would not support a finding of future dangerousness, appellant's complaint is without merit.

Appellant's complaint regarding the second special issue is reiterated in his seventeenth point of error, and we will address it there.

■ The third special issue asks whether, taking into consideration all of the evidence, there is a sufficient mitigating circumstance to warrant a sentence of life imprisonment rather than death.[7] Appellant complains that we do not conduct a sufficiency review of the mitigation issue. It is true that we do not conduct such a

review.[8] We have previously held that this does not violate appellant's constitutional rights.[9] Appellant gives us no reason to reconsider that holding. Point of error one is overruled.

■ In point of error seventeen appellant complains of the anti-parties special issue. The second special issue, required in cases in which the jury was given a parties instruction at the guilt portion of trial, asks whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.[10] The jury answered the question in the affirmative. Appellant claims that the jury's answer to the anti-parties special issue is not amenable to meaningful appellate review because it depends upon the threshold determination of whether the evidence is legally and factually sufficient to support a conviction for capital murder under the law of parties. Appellant also claims that the anti-parties special issue is unconstitutional because it fails to provide individualized assessment as to appellant's deathworthiness by failing to require a finding beyond that already found at the guilt stage. Although in some cases a jury's finding of guilt will be the functional equivalent of an affirmative answer to the anti-parties special issue, that is not always so. A defendant may be convicted of capital murder under

---

4. *See* TEX. CODE CRIM. PROC., art. 37.071, § 2(b)(1).

5. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

6. *See Vuong v. State*, 830 S.W.2d 929, 935 (Tex.Crim.App.1992).

7. *See* TEX. CODE CRIM. PROC., art. 37.071, 2(e)(1).

8. *See Green v. State*, 934 S.W.2d 92, 106–7 (Tex.Crim.App.1996).

9. *Id.*

10. *See* TEX. CODE CRIM. PROC., art. 37.071, 2(b)(2).

§ 7.02(b)[11] without having the intent or actual anticipation that a human life would be taken that is required for an affirmative answer to the anti-parties issue.[12] The fact that the anti-parties issue is redundant in this case does not mean it cannot be afforded meaningful appellate review, as it is amenable to both factual and legal sufficiency review and does provide assessment of deathworthiness. Point of error seventeen is overruled.

In point of error twenty-one appellant complains that the third special issue is unconstitutional because it omits a burden of proof. Appellant claims the mitigation special issue violates the Eighth Amendment by providing a conduit for the State to introduce evidence that supports an affirmative finding of future dangerousness without a burden of proof. We have addressed the issue and held that the lack of a burden of proof does not violate the Constitution.[13] Point of error twenty-one is overruled.

In appellant's second, fourth, and sixth points of error, he claims that his rights to due process, equal protection and effective assistance of counsel were violated when the trial court overruled his request to use peremptory challenges following examination of the entire venire. In points of error three, five, and seven, appellant also claims that his rights were violated by this Court's unconstitutional interpretation of the Code of Criminal Procedure Article 35.13. We have previously addressed the argument that capital defendants are discriminated against in relation to non-capital defendants and held that there is no due process,[14] equal protection[15] or effective assistance of counsel[16] violation for refusing to permit retrospective strikes in capital cases. Appellant argues that a plain reading of Article 35.13 reflects that it governs the order of acceptance or challenge of a qualified juror and not the time for exercising challenges against qualified jurors. He contends that this court, in *Grijalva v. State*, erred to read into the statute a requirement that peremptory challenges be exercised at the time the particular jurors are qualified.[17] But even if he were correct in that regard, and *Grijalva* was wrongly decided, appellant would not be entitled to relief. Trial courts have broad discretion to control the conduct of jury selection.[18] The fact that a court may permit the proposed voir dire procedure, does not mean that the court must permit the procedure. Absent a constitutional violation, appellant cannot show that the trial court erred. Points of error two through seven are overruled.

---

11. TEX. PEN. CODE § 7.02(b) provides:
 If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, *though having no intent to commit it,* if the offense was committed in furtherance of the unlawful purpose and was one that *should have been anticipated* as a result of the carrying out of the conspiracy. (Emphasis added).

12. *See Prystash v. State,* 3 S.W.3d 522, 541 n. 4 (Tex.Crim.App.1999)(Keller, J. concurring), *cert. denied,* 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000); *Johnson v. State,* 853 S.W.2d 527, 535 (Tex.Crim.App.1992).

13. *See Prystash* 3 S.W.3d at 535–36.

14. *See Janecka v. State,* 739 S.W.2d 813, 833–34 (Tex.Crim.App.1987).

15. *See Id.*

16. *See Dowthitt v. State,* 931 S.W.2d 244, 251 (Tex.Crim.App.1996).

17. *Grijalva v. State,* 614 S.W.2d 420, 424 (Tex. Crim.App.1980).

18. *Curry v. State,* 910 S.W.2d 490, 492 (Tex. Crim.App.1995).

In points of error fourteen through sixteen appellant complains of the trial court's exclusion of the audio portion of the videotaped interview of appellant's mother and the transcript of that interview. He argues that (1) the evidence is admissible as the basis of expert testimony, (2) the evidence is admissible as statement of personal or family history under Texas Rule of Evidence 804, and (3) exclusion of this evidence violates his due process rights.

The problem posed here is that the videotaped interview is hearsay,[19] which is inadmissible unless there is an exception.[20] Appellant claims the evidence is admissible under the "Statement of Personal or Family History" exception found in Rule 804. As a threshold matter, all hearsay exceptions under Rule 804 require a showing that the witness is unavailable. Appellant contends that he meets that showing because his mother is in Cuba, and he cannot procure her presence due to travel restrictions imposed by the United States government and the lack of subpoena power over Cuban residents. We will assume that appellant has satisfied the showing of unavailability under Rule 804(a)(5).[21]

■ The "Statement of Personal or Family History" exception, found in Rule 804(b)(3), permits the admission of:

(A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history even though declarant had no means of acquiring personal knowledge of the matter stated; or

(B) A statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage, or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

Appellant's mother's testimony concerned matters such as her own medical problems, appellant's difficulties in the Texas Youth Commission, appellant's desire to leave Cuba, his lack of legal difficulties in Cuba, and abuse inflicted upon appellant by his stepfather. These matters do not fall under Rule 804(b)(3).

■ The next question is whether this otherwise inadmissible evidence can be admitted as a basis for expert opinion. Texas Rules of Evidence 705(d) sets forth a balancing test for determining when otherwise inadmissible evidence can be admitted when it is relied upon by an expert in forming opinions:

When underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as an explanation or support or are unfairly prejudicial.

Judge Frank Maloney once remarked, "One of the greatest dangers in allowing otherwise inadmissible evidence under Rule 705 is that the jury will consider the facts and data as substantive evidence rather than as merely constituting the un-

---

19. *See* TEX. R. EVID. 801(a)-(d).

20. *See* TEX. R. EVID. 802.

21. Rule 804(a)(5) provides:
"Unavailability as a witness" includes situations in which the declarant ... is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance or testimony by process or other reasonable means.

derlying basis for the expert's opinion." [22] We agree, and we find that there is such a danger here. Allowing the defense to present appellant's mother's statements to the jury would have entailed a danger that the jury would consider those statements as substantive evidence. Moreover, appellant's expert Dr. Cervantes testified that he relied on the videotaped interview with appellant's mother and stated some of the facts from the interview that were the basis of his expert opinion. Given that testimony, appellant did not need to present the actual videotaped statements to show the jury that the expert was relying upon significant information conveyed by appellant's mother. The proponent's need for the evidence—for a legitimate purpose—is a traditional factor in conducting a Rule 403 balancing test,[23] and we find that factor applicable.[24] Under the circumstances present here, the trial court did not abuse its discretion in declining to admit the evidence under Rule 705.

■ Appellant's final claim is that exclusion of the evidence violated his constitutional right to due process. Appellant cites *Chambers v. Mississippi*[25] for the proposition that the hearsay rule must bend when the State has no sufficient basis for doubting the reliability of the hearsay statement and it could have aided the jury in its determination of a material issue. The Supreme Court has stated that *Chambers* does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence.[26] In *Chambers*, the Court stated:

> Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest.[27]

In the present case, the excluded evidence does not fall under any exception to the hearsay rule and does not bear persuasive assurances of trustworthiness. Even if we were to assume that the exclusion of this evidence was erroneous under state law, we held in *Potier v. State* that in order for the exclusion of defensive evidence to rise to the level of constitutional error the evidence must form such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.[28]

Appellant was allowed to present evidence of his childhood in Cuba. Dr. Cervantes, appellant's expert witness, testified that appellant: (1) was exposed to a moth-

**22.** *Cole v. State*, 839 S.W.2d 798, 815 (Tex.Crim.App.1990)(Maloney, J. concurring on rehearing); *see also Aguilar v. State*, 887 S.W.2d 27, 30 (Tex.Crim.App.1994)(discussing Judge Maloney's concurring opinion in *Cole*).

**23.** *Salazar v. State*, 90 S.W.3d 330, 337 (Tex. Crim.App.2002).

**24.** *See Prystash*, 3 S.W.3d at 529 (trial court within its discretion in preventing expert witness from disclosing the defendant's jail classification, even though it formed part of the basis of the expert's opinion, where trial court allowed the expert to state that he had reviewed the jail records).

**25.** *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

**26.** *See United States v. Scheffer*, 523 U.S. 303, 316, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).

**27.** *Chambers v. Mississippi*, 410 U.S. at 302, 93 S.Ct. 1038.

**28.** *Potier v. State*, 68 S.W.3d 657 (Tex.Crim. App.2002).

er who had multiple sex partners, (2) witnessed abuse of his mother by various men including Angel Pineda, (3) witnessed her being forced into various sexual acts, (4) was beaten multiple times and was forced to kneel on sharp objects, (5) suffered from severe poverty, (6) suffered severe anxiety attacks after overhearing his mother being sodomized by one of the men, (7) began to have behavioral problems after his father left Cuba, (8) wet his bed until the age of eleven or twelve, and (9) desperately wanted to be come to the United States to be reunited with his father. In addition, appellant was allowed to play the videotaped interview without the audio portion and the jury was able to see the living conditions in Cuba. Appellant's brother, Gabriel Valle, also testified to some of the same things as Dr. Cervantes, as well as that: (1) appellant's mother was in an accident when she was three years old and suffered a head injury, (2) he and appellant witnessed their mother's suicide attempts, (3) appellant's mother was paid to have sex with Angel while he was in jail, (4) one of the men in their mother's life would make the boys take their clothes off, kneel on bottle caps, and extend their arms, and he would hit them with sticks if they put their arms down, (5) they were teased by the community for letting Angel hit their mother, (6) Angel hit their mother with a thick board on her ribs, and (7) Angel killed appellant's dog in front of him.

The evidence that was excluded by the trial court contained some of the same information to which Dr. Cervantes and Gabriel Valle testified, but it also included statements that the mother had taken appellant to a psychologist, he was never in any trouble while he was in Cuba, and he was abused by his stepfather. The excluded evidence was relevant to the mitigation

special issue, but the exclusion of this evidence does not amount to a denial of the constitutional right to due process. The fact that appellant was not able to present his case in the form he desired does not amount to constitutional error when he was not prevented from presenting the substance of his defense to the jury.[29] Points of error fourteen through sixteen are overruled.

In points of error eight through thirteen appellant claims the trial court's failure to preclude the State from seeking the death penalty violated his constitutional rights because of his inability to obtain and present known mitigating evidence, caused by the travel restrictions to Cuba and the lack of subpoena power over Cuban citizens and authorities. Appellant claims that his mother, who lives in Cuba, could have testified about circumstances of appellant's childhood that were relevant to the mitigation issue. Appellant filed a Motion to Preclude the State From Seeking the Death Penalty and a Motion to Set Aside the Indictment in the trial court. Both motions were denied.

Appellant's contention that he suffered a constitutional violation is dependent upon the resolution of points of error fourteen through sixteen. Because he suffered no constitutional violation, he is not entitled to relief.

In point of error eighteen appellant claims he was denied meaningful appellate review of his death sentence when the court reporter failed to record a bench conference in which appellant had made an objection to the introduction of evidence. During the punishment phase of the trial the following occurred:

**29.** *See United States v. Willie,* 941 F.2d 1384, 1398–99 (10th Cir.1997), cert. denied, 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992).

Mr. Goodhart: Judge, at this time, the state would move to introduce States's exhibit 36, 37, 39 through 41.

(State's Exhibit(s) No. 36, 37, 39 through 41 offered)

(discussion off the record between defense and prosecutor)

Mr. Morrow: May we approach, your Honor?

The Court: You may.

(At the bench, off the record)

(Open court, defendant and jury present)

Mr. Morrow: Judge, subject to the argument we made at the bench, we have no objections to 36, 40, 41, and 37.

The Court: They will be admitted into evidence.

(State's Exhibit(s) No. 36, 37, 39 through 41 admitted)

Appellant argues that Texas Rules of Appellate Procedure 13.1 makes the creation of a full record mandatory unless affirmatively waived. Appellant also claims that under the new rule appellant is not required to object to the court reporter's failure to make a full record. For support, he cites to an opinion from the Thirteenth Court of Appeals.[30]

■ Rule 13.1 of the Texas Rules of Appellate Procedure states in part that the official court reporter must "attend court sessions and make a full record of the proceedings unless excused by agreement of the parties."[31] Under former Rules 11(a)(1) and (2), a record was required only when requested by the trial court or a party. The current rule therefore makes automatic a procedure that used to be conditioned upon a request.

■ In *Moore v. State*-a case decided under the former rules-the trial court granted the defendant's motion to record bench conferences.[32] We held that bench conferences are different from normal "trial proceedings" and that a motion to record bench conferences is akin to a motion in limine, in that it tells the trial participants how to proceed upon the occurrence of certain events.[33] While the granting of a pretrial motion to record bench conferences relieves a party of the burden of asking to have each bench conference recorded as it occurs, it does not preserve error.[34] As a part of error preservation, a party is required to object.[35]

We need not decide whether the current rule requires court reporters to record all bench conferences whether or not such recording is requested. If the rule does so require, it simply places a party in the same position he would be in if recording of bench conferences had been requested before trial. Under *Moore*, even when a defendant requested under the old rule that bench conferences be recorded—and the court reporter was thus required to record the proceedings—it was incumbent upon him to object if the bench conferences were not recorded.[36] Consequently, we disapprove of *Tanguma's* holding that

---

**30.** *Tanguma v. State*, 47 S.W.3d 663, 674 (Tex.App.Corpus Christi 2001, pet. ref'd).

**31.** We quote from the rule's 1997 version, applicable to appellant's case. A nonsubstantive revision of the rule's wording occurred in 2003.

**32.** *Moore v. State*, 999 S.W.2d 385, 397 (Tex. Crim.App.1999), *cert. denied*, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000).

**33.** *Id.* at 398.

**34.** *Id.*

**35.** *Id.*

**36.** *Id.; see also Walthall v. State*, 594 S.W.2d 74, 81 (Tex.Crim.App.1981).

the current rule dispenses with the requirement of an objection to preserve error. An objection is still required.

The record does not reflect that appellant made an objection to the court reporter's failure to record the bench conferences nor does appellant allege he made such an objection at trial. Therefore, appellant has failed to preserve his complaint for appeal. We overrule point of error eighteen.

 In point of error nineteen, appellant claims he was denied his right to effective assistance of counsel when the trial court denied his motion to unseal the jury list and provide $500 to hire a licensed investigator to interview all the jurors. Appellant's motion appears to have the sole purpose of discovering the jurors' personal information. He is not entitled to such information unless he shows good cause.[37] Appellant alleged at trial that he needed the information to determine whether he should file a motion for new trial. Such a general allegation is not sufficient to establish good cause. Nor does appellant give any other reason for needing an investigator. Point of error nineteen is overruled.

 In point of error twenty, appellant claims the trial court erred by overruling his relevance objection to the testimony of State's witness Robert Dolan.

On direct examination the following occurred:

Q. Are you scared about testifying against Cubano?

A. Yes, sir.

Q. Are you in fear of your life?

A. Yes, sir.

Mr. Cunningham: I object to relevance, Your Honor.

The Court: That will be overruled.

Q. (By Mr. Goodhart) What did you say?

A. Yes, sir.

Q. Listen carefully. Sometime after August 15th of 1999, did you approach the police?

A. Yes, Sir.

Q. Why did you approach the police and with what?

A. I was scared.

Q. *Scared of what?*

A. *That maybe I was going to be killed.*

(Emphasis added). To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection.[38] In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection.[39] An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection.[40] In the present case appellant failed to object

---

**37.** *See* TEX. CODE CRIM. PROC., art. 35.29:

> Information collected by the court or by a prosecuting attorney during the jury selection process about a person who serves as a juror, including the juror's home address, home telephone number, social security number, driver's license number, and other personal information, is confidential and *may not be disclosed by the court*, the prosecuting attorney, the defense counsel, or any court personnel *except on application by a party in the trial* or on application by a

> bona fide member of the news media acting in such capacity to the court in which the person is serving or did serve as a juror. *On a showing of good cause, the court shall permit disclosure of the information sought.* (Emphasis added).

**38.** *See* TEX. R. APP. P. 33.1.

**39.** *See Ethington v. State* 819 S.W.2d 854, 858 (Tex.Crim.App.1991).

**40.** *Id.*

when the witness testified the second time that he was fearful for his life. Any error in the admission of the objected-to testimony was therefore cured. Point of error twenty is overruled. The judgment of the trial court is AFFIRMED.

PRICE and JOHNSON, JJ., concurred in the result.

COCHRAN, J., concurred in point of error eighteen and otherwise joined.