

# NUMBERS 13-11-00633-CR AND 13-11-00634-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**DWIGHT LEONARD BULLOCK,**                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                           **Appellee.**

## On appeal from the 1st District Court
## of Jasper County, Texas.

## MEMORANDUM OPINION[1]

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Dwight Leonard Bullock challenges his convictions for aggravated sexual assault of two boys under the age of fourteen. *See* TEX. PENAL CODE ANN. §

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

22.021(a)(2)(B) (West Supp. 2011).  Tried to the same jury, Bullock was found guilty of each offense and was sentenced to life in the Texas Department of Criminal Justice, with the sentences to run consecutively.  The jury also assessed a $10,000.00 fine in each case.  Bullock complains by his first three issues that the trial court erred in admitting (1) the grandmother's outcry-witness testimony; (2) four video/audiotapes of the children's interviews with Nancy Blitch, an employee of the State of Texas Children's Protective Services Division; and (3) testimony provided by Brenda Garrison, a sexual assault nurse examiner.  Bullock also complains, in his fourth issue, that the trial court erred when it excluded testimony regarding the children's family.  Finally, by his fifth issue, Bullock asserts that he was denied a complete record on appeal.[2]  We affirm.[3]

## I.  ADMISSION AND EXCLUSION OF EVIDENCE[4]

### A.  STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2011). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement.  *Id.*  If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision.  *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

---

[2] We reorganized and renumbered Bullock's ten issues as five.

[3] Upon Bullock's motion, the Ninth Court of Appeals consolidated the cases for purposes of filing the reporter's record and briefing, and we will address them in one opinion.

[4] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4.

2

"A timely and specific objection is required to preserve error for appeal." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *see* TEX. R. APP. P. 33.1(a)(1)(A). Appellate arguments must correspond with the objection at trial. *Gallo v. State* 239 S.W.3d 757, 768 (Tex. Crim. App. 2007). "An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008)). "If a party fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.* (citing *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (en banc)). In addition, "'[a]n error[, if any,] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.'" *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (citation omitted); *see Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (same and "[i]n addition, a party must object each time the inadmissible evidence is offered or obtain a running objection").

## B.    Outcry-Witness Testimony

By his first issue, Bullock contends that the trial court erred in admitting hearsay statements of the two children through their grandmother. At trial, Bullock objected that the testimony was hearsay and that the children's grandmother was not the proper outcry witness because she was not the first adult above the age of eighteen to whom the children made the statements. Bullock also claims that the admission of the children's grandmother's testimony denied him his right to confrontation.

3

The children's grandmother testified as the State's outcry witness.[5] The State later called Garrison as its expert in the area of sexual assault examinations. Garrison testified that she was a nurse employed with the Child Abuse and Forensic Services and that she had examined each of the children. She testified about the details of each child's examination and about each child's narrative of his accusations against Bullock. Garrison included this information in her examination reports, which the trial court admitted as trial exhibits. Bullock did not object when the trial court admitted this evidence, which was the same or similar evidence as testified to by the children's grandmother. Therefore, assuming without deciding that the grandmother's outcry testimony was inadmissible, we conclude that error, if any, was cured because the same or similar evidence came in elsewhere without objection. *See Lane*, 151 S.W.3d at 193; *Valle*, 109 S.W.3d at 509. We overrule Bullock's first issue.

## C. Video/Audio Recordings

In his second issue, Bullock contends that the trial court erred in admitting the children's video/audio taped interviews as exhibits at trial. Bullock objected that the exhibits were inadmissible hearsay and that the introduction of the videotapes resulted in the denial of his constitutional right to confront the witnesses and his right to due process.

The trial court admitted the video/audio tapes of the children's interviews with Blitch at Garth House in Beaumont, Texas. It also admitted into evidence the transcripts

---

[5] The children's grandmother testified that, in March 2010, the children told her that Bullock was having sex with them at night. She provided two written statements, dated March 12, 2010, in which she wrote what each child told her. The grandmother read each statement into the record over Bullock's objection; however, the statements were admitted as State Exhibits 1 and 2, upon defense counsel's oral representation of "no objection."

4

of those interviews.[6]   Bullock objected to the admission of the video/audio tapes. However, he did not object to the subsequent admission of the transcripts of those same video/audio tapes.   Rather, Bullock's counsel affirmatively stated that he had "no objection" to the admission of the transcripts.   Therefore, even determining that the trial court admitted the video/audio tapes in error, we conclude that the error, if any, was cured because the same or similar evidence in the form of transcripts of the video/audio tapes came in elsewhere without objection.   *See Lane*, 151 S.W.3d at 193; *Valle*, 109 S.W.3d at 509.

Bullock also complains that the predicate under article 38.071 was not satisfied. *See* TEX. CODE CRIM. PROC. ANN. art. 38.071 (West Supp. 2011) (providing for the testimony of a child victim of certain offenses).   Because Bullock did not make that objection at trial, he has not preserved for our review any complaint regarding the sufficiency of the predicate.   *See Gallo*, 239 S.W.3d at 768.

We overrule Bullock's second issue.

## D.    Sexual Assault Nurse's Testimony

Bullock complains by his third issue that the trial court abused its discretion when it allowed Garrison, the sexual assault nurse, to speculate concerning the cause of a condition she observed.   He asserts that the State utilized this testimony during closing argument to obtain a conviction in each case, which resulted in harm to Bullock.

When describing her sexual assault examinations, Garrison testified as follows regarding one child's weak sphincter muscle:

Q.    Can we tell one way or the other how the sphincter gets weak?

---

[6] Bullock does not challenge to accuracy of the transcript.

5

A. Not for sure. . . . We can't be 100 percent sure. We do note that because that's consistent with a patient that's been anally penetrated.

Q. What are some other possible reasons for that?

A. I can't think of any. Physically, I can't think of any. There may be some medical condition. He didn't have a medical condition that would cause a loose sphincter know [sic]. Penetration with some type of hard object, whether it's a penis or some other hard object, is the most likely cause of this.

      [Defense Counsel]: Objection –

      The Court:       Overruled.

Bullock complains of this testimony.

It is clear that the State's questions called for a speculative answer. The State asked if one could tell how the sphincter gets weak and if there were reasons other than being anally penetrated. The ground for objection was apparent when the State asked its questions. However, Bullock objected for the first time only after Garrison testified that the child did not have a medical condition that would cause a loose sphincter, rather "[p]enetration with some type of hard object, whether it's a penis or some other hard object, is the most likely cause of this." Bullock offered no explanation for failing to object before Garrison answered. Because the ground for raising an objection based on speculation became apparent by the State's questions and no legitimate reason for Bullock's delay in making the objection is apparent from the record, we conclude that his objection was not timely. *See Luna*, 268 S.W.3d at 604; *Grant*, 345 S.W.3d at 512; *see also* TEX. R. APP. P. 33.1(a)(1)(A). Bullock's late objection did not preserve error. *See Dinkins*, 894 S.W.2d at 355 (finding that appellant who made an objection to questions

6

calling for speculation after witness answered was untimely and appellant waived error for review by not offering a reason for the delay in objecting).

Moreover, even if Bullock had preserved error, we nonetheless conclude that it was harmless because before the complained-of testimony occurred, Garrison testified, without objection, that the condition of the child's anal sphincter was "consistent with a patient that's been anally penetrated" and "the sphincter gets weak because it's penetrated multiple times." *See* TEX. R. APP. P. 44.2(b); *see also Valle*, 109 S.W.3d at 509. Because the same or similar evidence came in elsewhere without objection, the error was cured. *See Lane*, 151 S.W.3d at 193. We overrule Bullock's third issue.

**E.      Testimony regarding the Children's Home and Family**

By his fourth issue, Bullock contends that the trial court erred in excluding the testimony concerning family conflicts and contacts between the children and a registered sex offender, their father. He claims that this testimony could have convinced the jury that the children's allegations were false and were, instead, based on contact with another sex offender. Bullock argues that this "evidence was relevant in order that the jury could appreciate and evaluate the situation of the subject children in determining their credibility."

Bullock bases his argument on the testimony of his expert, Stephen Thorne, Ph.D., a clinical and forensic psychologist. Dr. Thorne testified that "[p]robably the biggest [reason for false allegations] in the research and my experience is for family trauma, family conflict, whether it be in the legal system or outside of the legal system." Bullock argues that the trial court's exclusion of testimony regarding the "dysfunctional" nature of

7

the family harmed him because it prevented the jury from assessing the relevance of these factors in conjunction with expert testimony.

### 1.    Disturbances at the Children's Home

The trial court refused to allow Bullock to offer evidence regarding disturbances at the children's home.   Bullock made an offer of proof of the testimony of Joshua Hadnot, a Jasper Police Officer, who testified that, on September 2, 2010, he received a dispatch to the children's home on a "shots fired" call.   This call involved an alleged physical altercation between the children's grandmother and her husband, who is also the children's father.   Officer Hadnot also testified that on April 2011, he was again dispatched to a disturbance at the children's home on a "shots fired" call.   These incidents, however, occurred six months and eleven months, respectively, after the children made their statements to their grandmother in March 2010.

The State contends that the trial court acted within its discretion in excluding Officer Hadnot's testimony.  We agree.  The events to which Officer Hadnot testified occurred after the children talked with their grandmother about the alleged sexual assaults.  The events also occurred after the prosecutions had commenced in these cases.[7]  Bullock does not explain how these events would be relevant to the sexual assault offenses being tried against him.   *See* TEX. R. EVID. 402 (explaining that irrelevant evidence is inadmissible).

In addition, even assuming without determining that Officer Hadnot's testimony was relevant because, according to Dr. Thorne, "[p]robably the biggest [reason for false

---

[7] The Grand Jury indicted Bullock on May 4, 2010.

8

allegations] . . . is . . . family conflict," we cannot conclude that this testimony provided reasons for the children to make false allegations of sexual assault against Bullock because the alleged family conflicts occurred after the children spoke to their grandmother about Bullock's alleged conduct. The trial court could have concluded that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See id.* at R. 403 (providing that even relevant "evidence may be excluded if its probative value is substantially outweighed by[, among other things,] the danger of unfair prejudice, confusion of the issues, or misleading the jury").

### 2. Contact with Another Sex Offender

Bullock also contends that the trial court erred when it excluded evidence offered through the testimony of psychologist Robert King,[8] who had treated the children for anger management issues since 2004. It is undisputed that notes in King's records set out that in February 2006 one of the children was living with a sex offender. When Bullock attempted to question King about these notes, the State objected.[9] After King testified that he had no information about the identity of the sex offender in his notes, the trial court sustained the State's objection and instructed the jury to disregard the testimony.

We conclude that the trial court properly excluded King's testimony. King did not

---

[8] Robert King is also referred to as Robert Keen throughout the appellate record.

[9] The State argued that Bullock was attempting to offer evidence that the children's father was a sex offender as a result of his deferred adjudication for his relationship with the children's mother when she was under legal age. We note that the children's father testified that the boys were his children and that his wife was their grandmother. In an offer of proof, the father also testified that his wife's daughter was the mother of the children and that he was accused of a sex offense in regard to that relationship. According to their father, the children's mother was sixteen or seventeen when she had one of the children and between nineteen and twenty-two when she had the other child. The State claimed this testimony would not be admissible to impeach the father.

know the identity of the "sex offender" and did not have any other information about him or his impact on the family. Bullock has not explained how this evidence would be admissible. He has not explained its relevance. In any event, the trial court admitted the notes that form the basis of this issue into the evidence before the jury as part of Defense Exhibit 8. Thus, the jury had that information available to them despite the trial court's instruction to disregard King's testimony about the record. Again, the trial court's decision to exclude this evidence was correct because the trial court could have excluded the evidence because it was not relevant to the offense charged or because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 402, 403; *De La Paz*, 279 S.W.3d at 344.

### 3. Summary

We conclude that the trial court did not abuse its discretion in excluding this evidence regarding alleged family conflicts and relationships because its determination did not lie outside the zone of reasonable disagreement. *See Martinez*, 327 S.W.3d at 736. We overrule Bullock's fourth issue.

## II. APPELLATE RECORD

In his fifth issue, Bullock complains that he has been deprived of a complete record because the pre-trial hearings relevant to his issues were not included in the reporter's record filed with this Court. The State requested supplementation of the record and on September 27, 2012, the court reporters supplemented the appellate record with transcripts of pre-trial hearings held from March 8, 2011 through August 10, 2011. Bullock has filed no supplemental brief complaining that the appellate record is still

10

incomplete. Therefore, because the reporter's record has been supplemented to include pre-trial-hearing records, this issue is moot.

### III. CONCLUSION

We affirm the judgments of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 14th
day of February, 2013.

11