

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00112-CR

MATTHEW CALLIE MCCOY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 18,338

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

An Upshur County jury found Matthew Callie McCoy guilty of eight counts of indecency with John Doe,[1] a child. The jury assessed a sentence of twenty years' imprisonment for the first count of indecency and fifteen years' imprisonment for each of the remaining seven counts. On appeal, McCoy argues that the trial court erred (1) by admitting Doe's mother's testimony about McCoy's violent tendencies, (2) by admitting intake assessment notes from Doe's licensed professional counselor, and (3) by allowing the State to cross-examine McCoy about extraneous acts.

We find that McCoy failed to preserve his first point of error, that he was unharmed by his sole unwaived complaint about the intake assessment, and that he was unharmed by the State's cross-examination about extraneous acts. As a result, we affirm the trial court's judgment.

I.      General Background

Thirteen-year-old Doe was the State's first witness at trial. He testified in detail about the acts of sexual contact by McCoy. In summary, Doe said that McCoy had (1) touched his buttocks inside of his clothing while he was asleep at grandmother's home, (2) touched his bottom in a hotel room and was "rubbing," and (3) touched his genitals with his hands and mouth and (4) that such contact had occurred ten or more times. Doe added that McCoy would also hit him on his legs and face and that he threatened to kill him.

---

[1]To protect the identity of the child victim, we use pseudonyms for the child and his mother. *See* TEX. R. APP. P. 9.10(a)(3).

Doe eventually made an outcry to his mother. According to Mother, Doe said he feared McCoy because he had been "touching [Doe] inappropriately." Doe told Mother that McCoy "would start by rubbing [his] leg and inner thigh and then [would] touch and pull [his] penis." Mother testified that she reported the statements to the Gilmer Police Department. After Doe was interviewed at a Child Advocacy Center, McCoy was arrested.

McCoy testified at trial and denied Doe's allegations. Even so, the jury chose to believe Doe and found McCoy guilty of all eight counts of indecency with a child. McCoy appeals.

## II.    McCoy Failed to Preserve His First Point of Error

In his first point of error, McCoy argues that the trial court erred by admitting Mother's testimony about McCoy's violent tendencies, including evidence during the State's "redirect on alleged extraneous offenses." We find that McCoy failed to preserve this issue for our review.

"As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context and" that either the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a).

Without objection, Mother testified that she had observed violent tendencies in, and "outbursts" from, McCoy. During cross-examination, Mother said that Doe spent time with McCoy even though she knew he had violent tendencies. Because of this testimony, the State

3

argued that the defense had opened the door to explore the reasons why Mother continued to allow Doe to see McCoy.

The State represented, "Your Honor, the testimony would be this:  The violent tendency and the abuse, at that point, was related strictly and solely to [Mother].  That's it.  She had no idea that there would be physical, much less sexual abuse, of her children."  In response, McCoy's counsel argued,

> I think any testimony she would offer on those issues is definitely prejudicial to my client and less probative of these allegations against the child.  It's unfortunate that she's left the jury with the impression that regardless of what her opinions are, she agreed . . . and had her kids . . . going back and forth to Mr. McCoy's house.  I mean, unfortunately, that's the impression she's left because that's what happened.  I don't think we've opened a door to anything.  I think all of that is just an attempt to bring in a lot of extraneous allegations by her that are unsubstantiated by anything other than her testimony.  They're not reliable and definitely more prejudicial than probative of what we're here about today.

The trial court overruled McCoy's Rule 403 objection to the evidence "to let the State develop the testimony as to why [Mother]" "continued to let [Doe] go over there [to visit McCoy]."

On redirect, Mother explained that she allowed Doe to visit McCoy because his violent tendencies were only directed toward her.  Then, without objection, the State elicited testimony about the following specific instances of McCoy's conduct towards Mother:

Q.      . . . [Mother], did he ever physically strike you?

A.      Yes.

Q.      Did he push you around?

A.      Yes.

Q.      Has he ever headbutted you?

A.      Yes.

Q.      Has he ever held a knife to your face while you were holding your child?

A.      Yes.

Q.      [Mother], has he physically and violently raped you?

A.      Yes.

Q.      Has he ever used weapons to destroy your property?

A.      Yes.

During cross-examination, McCoy also elicited testimony from Mother that McCoy headbutted her, held a knife to her, and destroyed her property with weapons.

Here, we find that McCoy did not raise a timely objection to Mother's testimony about McCoy's abuse toward her and that the trial court's prior Rule 403 ruling did not save McCoy from the requirement to object. Mother, who testified about McCoy's violent tendencies and outbursts, said that she continued to allow Doe to see McCoy during cross-examination. To rebut the idea that Mother was unreasonable in doing so, the State argued that it should be allowed to establish that McCoy's abusive conduct was directed towards Mother and not her children, including Doe. At that point, nothing in the State's argument suggested that it sought to introduce specific instances of McCoy's conduct towards Mother. The trial court overruled McCoy's Rule 403 objection simply to allow the State to explain why Doe was allowed to continue visiting McCoy. The trial court's ruling did not indicate that it understood the State would raise specific instances of conduct, and nothing in the ruling suggested that the State could

5

do so. In line with the court's ruling, the State's initial examination of Mother explained why she allowed Doe to visit McCoy despite his violent tendencies, but when the State delved into specific instances of abuse involving Mother, McCoy failed to object and even emphasized some of the abuse during cross-examination.

McCoy was required to raise a timely objection to Mother's testimony about his abuse toward her. Because he did not, we find that McCoy failed to preserve his first point of error, which we overrule.

### III.    McCoy Was Unharmed by His Sole Unwaived Complaint about the Intake Assessment

The State offered, under the business record exception to the hearsay rule, a multiple-page intake assessment authored by Carol Pendley, Doe's licensed professional counselor. *See* TEX. R. EVID. 803(6). Even so, McCoy objected on the ground that the intake assessment "contain[ed] hearsay within hearsay," without further elaboration. The trial court overruled McCoy's objection.

On appeal, McCoy complains of the admission of the following statements from the intake assessment: (1) Doe thought McCoy was present during a school lockdown, (2) McCoy "touched [Doe] inappropriately and . . . also physically abuse[d] him," (3) McCoy "talk[ed] to himself constantly per [Doe]," (4) "[Mother] said . . . that he . . . used meth[amphetamine] in the past," and (5) "[Mother] said that [McCoy] [wa]s paranoid." We find that evidence of the first four statements was admitted through witness testimony during the trial without objection. We also find that McCoy was unharmed by the admission of the fifth statement.

6

"[A] party must object each time the inadmissible evidence is offered or obtain a running objection. An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (second alteration in original) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)). This rule applies whether the same evidence was admitted "without objection, either before or after the complained-of ruling." *Id.* (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)).

McCoy failed to object to the testimony of several witnesses that independently established the first four complained-of statements in the intake assessment. Pendley testified "[Doe] told me that there was a drill at school where they locked the kiddos down, and [Doe] thought that the drill was real and [McCoy] must be there." Mother testified that Doe was worried that McCoy would come after him at school. Doe and Pendley testified that McCoy sexually and physically abused Doe, and Mother testified that Doe was afraid of McCoy's sexual and physical abuse. Doe, Mother, and Nesha Taylor testified that McCoy would carry on conversations with himself or with "imaginary people."[2] During cross-examination, McCoy admitted that he had used methamphetamine in the past. Because this testimony was admitted without objection, any harm from the admission of the following statements was cured: (1) that Doe thought McCoy was present during a school lockdown, (2) that McCoy "touched [Doe] inappropriately and . . . also physically abuse[d] him," (3) that McCoy "talk[ed] to himself constantly per [Doe]," and (4) that Mother said McCoy used methamphetamine in the past.

---

[2]Taylor said that McCoy would get "pretty loud" during his monologues.

7

As for the statement that McCoy was paranoid, we find that McCoy was unharmed by any assumed error. We are to "disregard the error unless it affected appellant's substantial rights." *Webb v. State*, 557 S.W.3d 690, 695–96 (Tex. App.—Texarkana 2018, pet. ref'd) (citing TEX. R. APP. P. 44.2(b)). "Substantial rights are not affected by the [assumed] erroneous admission of evidence if, after reviewing the record as a whole, the appellate court has fair assurance that the error either did not influence or had only a slight effect on the finder of fact." *Id.* at 696 (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)).[3]

Here, Doe's testimony about McCoy's sexual contact was detailed and clear, and Mother's evidence of Doe's outcry, as well as Pendley's testimony, strengthened the State's case. McCoy's defensive theory was that it was "all fabricated." Because it was irrelevant to either the State's case or the defensive theory, the reference to McCoy's paranoia had little to no bearing on the issues in the case. The State made no mention of the statement during voir dire or closing argument, and the jury was properly instructed that it was required to find that the State met its burden of proof on all elements of the offense beyond a reasonable doubt. As a result, and in light of the record, we conclude that the sole reference to McCoy's paranoia was unlikely to have any effect on the jury's verdict. *See id.* Because we find that McCoy was unharmed by any alleged error in the admission of the statement that he was paranoid, we overrule his second point of error.

---

[3]"In weighing harm, we consider everything in the record, including the evidence, the character of the alleged error and how it might be considered together with the other evidence in the case, the jury instructions, the State's theory, any defensive theories, closing arguments, voir dire, and whether the evidence of guilt is overwhelming." *Webb*, 557 S.W.3d at 696 (citing *Motilla*, 78 S.W.3d at 355–58).

## IV.    McCoy Was Unharmed by the State's Cross-Examination

In his last point of error, McCoy argues that the trial court erred by allowing the State to cross-examine him on "highly prejudicial, extraneous offenses that had no real significance other than to taint the jury's view of [him]." We find that McCoy was unharmed by the State's questioning.

During cross-examination, the State began to "talk about . . . perversions" and asked McCoy, if "[he] like[d] to wear [his] wife's underwear?" That question drew prompt objection from McCoy's counsel, who argued that the State was "about to get into improper impeachment" and "unadjudicated specific instances of conduct" that should be excluded under Rule 403.[4] After hearing the State's argument, the trial court ruled, "It's admissible under 609(b)."[5]

On appeal, McCoy complains of the following portion of transcript:

> Q.    . . . . You've had attraction to other males, correct?
>
> A.    No.
>
> Q.    Specifically when you were using drugs you were -- really had a heightened sense of attraction and desire to be around men?
>
> A.    No.
>
> Q.    And not only be around, but be with men –
>
> A.    No.

---

[4]Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

[5]Rule 609 of the Texas Rules of Evidence deals with "evidence of a criminal conviction offered to attack a witness's character for truthfulness." TEX. R. EVID. 609(a).

Q.      -- sexually, correct?

A.      No. You're just painting a picture of me being weird. I don't do that.

Q.      Well, I'm sorry. I didn't hear the answer.

A.      You're just trying to paint a picture of me being weird. I don't do that.

Q.      Just like you don't talk to yourself?

. . . .

Q.      . . . . So when it gets into the pornography -- in fact, you had a porn fetish, correct?

A.      No. Never.

Q.      And you watched porn on your phone, correct?

A.      That's not true. Never, ever.

Q.      You never watched porn?

A.      It's stupid. I don't look at that.

McCoy argues that Rule 609 only permits impeachment by prior criminal convictions, but none of the acts mentioned during questioning involved criminal conduct. McCoy also argues that because attraction to the same sex and watching pornography is irrelevant to the question of whether McCoy committed indecency with a child, the trial court should have barred the State's questioning under Rule 403.

Assuming error, we find that McCoy was not harmed by the State's questioning. Before trial, the court had instructed the jury that "[a]ll the evidence must come from the witnesses and the exhibits that [were] admitted during trial." Because McCoy answered the State's questions with negative answers, there was no evidence that he had engaged in any of the extraneous acts

referenced during the questioning. As a result, none of the topics covered by the State's questions were mentioned during closing argument. Further, the trial court's jury charge instructed the jury that statements of counsel were not evidence and were to be "WHOLLY DISREGARDED." Considering the evidence, including Doe's clear testimony about McCoy's sexual contact, we find that the State's questioning did not affect McCoy's substantial rights. As a result, we overrule McCoy's last point of error.

## V.     Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     May 26, 2023
Date Decided:       June 7, 2023

Do Not Publish

11