

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

───────────────────────

No. 02-24-00029-CR

───────────────────────

ABEL ADAN ALBIAR, Appellant

V.

THE STATE OF TEXAS

───────────────────────

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1806491

───────────────────────

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

A jury convicted Appellant Abel Adan Albiar of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2). The jury found the enhancement paragraphs to be true and assessed punishment at 33 years' confinement. The trial court sentenced Albiar accordingly. In four issues on appeal, Albiar argues (1) that the trial court's and State's statements at voir dire violated his right to the presumption of innocence, and that the trial court's statements at voir dire were prejudicial under Rule 403 of the Texas Rules of Evidence (Issues one through three); and (2) that the trial court erred by allowing a police officer to give speculative testimony (Issue four). We affirm.

## I. BACKGROUND

Because Albiar does not challenge evidentiary sufficiency, we will summarize the facts only briefly. The complainant, Kimberly Rodriguez, testified at trial that she and Albiar's girlfriend, Chaylene, were friends. On January 17, 2020, Rodriguez gave Chaylene a ride to another friend's apartment. Rodriguez left Chaylene at the apartment while she returned to her house to change clothes and take her insulin. After a few minutes inside of her house, Rodriguez went back to her car, and Albiar approached her car. Albiar told Rodriguez that he wanted to talk to Chaylene, and he got into Rodriguez's vehicle. Rodriguez called and informed Chaylene that Albiar was with her, but Chaylene did not want him to come to the apartment. Rodriguez took Albiar to a Walmart parking lot to wait for Chaylene.

2

While they were waiting in Rodriguez's car at the Walmart parking lot, Albiar pulled out a knife. Albiar told Rodriguez that she better tell Chaylene to get there soon or he would stab Rodriguez through her heart or slit her throat. Chaylene told Rodriguez that she was going to the house she shared with Albiar, so Rodriguez took Albiar there. While they were waiting for Chaylene, Albiar stabbed Rodriguez in her chest, arm, and hand. Albiar then got out of Rodriguez's vehicle and walked away. Rodriguez drove herself to the hospital where she underwent surgery for her injuries. A nurse at the hospital called 911 to report the stabbing.

## II. VOIR DIRE

Albiar's first, second, and third issues all concern statements made during voir dire. At the beginning of voir dire, the trial court informed the jury panel that even though the trial might not get to the punishment phase, the court must talk about it now. The trial court explained that Albiar was charged with the second-degree felony offense of aggravated assault with a deadly weapon and told the jury panel the punishment range. The trial court then stated:

> Now, it's also possible that the State will give evidence that [Albiar] has already been to prison one time. If that happens - - and don't worry about these numbers, because all the parties will go over them, and they'll put them up on the screen for you, too. So don't feel like you need to memorize the numbers.
>
> But if the State were able to prove that the defendant had been to prison one prior time, that would raise the range from a minimum of five years, up to a maximum of 99 years or life in prison, and up to a $10,000 fine.

3

It is also possible that the State would be able to show that [Albiar] had been to prison two separate times prior. If that were the case, that raises the range to a minimum of 25 years in prison, up to a maximum of 99 years or life in prison.

Albiar did not object to the trial court's statements. The trial court then asked the jury panel if it could "keep an open mind" as to all three punishment ranges.

Later during voir dire when discussing punishment, the State said, "like the Judge said, if we prove our case, and we also prove that [Albiar] has been to the penitentiary one prior time, it will bump up the punishment range." The State then asked the jury panel without objection if they could consider the "five to 99 years for aggravated assault with a deadly weapon if we prove the enhancement?" The State went on to explain to the jury panel:

[Y]'all answered this already, but it's important that we go over it.

And again, habitual offender notice, this was the last one the Judge discussed. This is two consecutive . . . trips to prison. It bumped the range up again from 25 years to 99 years or life.

The State asked the jury panel if it could consider the full range of punishment for the enhanced offense. Albiar did not object at any time during the State's comments on the enhanced punishment range.

At the conclusion of the State's voir dire, Albiar's counsel stated outside the presence of the jury panel:

Judge, during your introduction or your initial - - initial portion of voir dire to this panel, prior to that, the State had showed me their - - their PowerPoint out of an abundance of caution. And during that, I saw during their - - their punishment qualifying questions that they

4

intended to present on the PowerPoint presentation to this voir dire - - or venire panel that they had used words like "repeat offender," and also in regards to repeat offender saying that it equated to the person being sent to the prison - - had a pen trip or had been already sentenced to prison.

Then they went on further to discuss in their - - in their PowerPoint habitual offender, which would mean that [Albiar] would - - if they could prove [Albiar] had two consecutive pen trips or prison trips, then that would enhance the penalty range from 25 to 99 years or life.

I had spoken to the State prior to them putting that up, and so we are going to approach the Court regarding that, and I was going to make this similar objection. And then - - the Court went in to explain it, and actually explained it the same way that the State had.

Judge, I just believe, out of an abundance of caution, I would like to make my objection to that. I believe that it's improper. I believe there's a 403. I believe it also comments on whether or not he is a convicted felon. Even in their case in chief only under certain circumstances would the fact that he has any priors even come into play during the case in chief.

I believe it taints his presumption of innocence. I believe that now the polling - - at this point, the entire venire panel, but specifically his jury, even before any evidence has been presented, I believe that they think that he's already been convicted and sent to prison at least once, and maybe twice, or even more.

And just I would - - so I would just like to place my objection in at this point. I believe it's improper, its 403 and it violates his presumption of innocence.

The trial court overruled the objections.

In his first and second issues, Albiar contends that the trial court's and the State's comments to the jury panel on the enhanced punishment ranges violated his right to the presumption of innocence. In his third issue, he argues that the trial

5

court's statements to the jury panel were prejudicial under Rule 403 of the Texas Rules of Evidence. The State responds that Albiar has not preserved his complaints for review.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). A party must object as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016). Because Albiar did not object at either the time of the trial court's comments or at the time of the State's comments, we agree that Albiar's objection was not timely. But fundamental error may be raised for the first time on appeal. *Blue v. State*, 41 S.W.3d 129, 131–32 (Tex. Crim. App. 2000) (plurality opinion). Fundamental error exists if comments made during voir dire taint the presumption of innocence. *Id.* at 132.

Thus, we will consider Albiar's first and second issues complaining that the trial court and the State violated his right to the presumption of innocence. However, because his third issue, that the trial court's statements were prejudicial under Rule 403 of the Texas Rules of Evidence, was not preserved with a timely objection and does not raise a fundamental error, we hold that that complaint was not preserved for review. Tex. R. App. P. 33.1(a)(1).

As to Albiar's first and second issues, the Texas Code of Criminal Procedure states that the indictment shall be read to the jury at the beginning of the trial on the merits. Tex. Code Crim. Proc. Ann. art. 36.01(a)(1). When prior convictions are alleged for enhancement purposes only and are not jurisdictional, that portion of the indictment shall not be read until the hearing on punishment. *Id.*

Article 36.01(a)(1) does not, however, prevent the trial court or the State from informing the jury panel of the applicable punishment range if the State were to prove a prior conviction for enhancement purposes. *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. 1982). But the trial court or the State may not inform the jury panel of the specific allegations contained in the enhancement paragraphs of the indictment. *Id.*

The record shows that neither the trial court nor the State discussed any specific allegations contained in the enhancement paragraphs of Albiar's indictment. They did not inform the jury panel of the dates of the offenses or convictions. They merely informed the jury panel of the applicable punishment ranges if the State were to prove prior convictions for enhancement purposes. We hold that the comments by the trial court and the State did not violate Albiar's right to the presumption of innocence. *See id.* We overrule Albiar's first and second issues.

## III. SPECULATIVE TESTIMONY

In his fourth issue, Albiar argues that the trial court allowed a police officer to give speculative testimony. At trial, Detective Aaron Christopher of the Fort Worth

Police Department testified that he was assigned to investigate Rodriguez's stabbing. Detective Christopher obtained Rodriguez's medical records which indicated she suffered approximately five lacerations. Detective Christopher stated that "the doctors believe that several of the wounds went in one side of the body and out the other [s]o we believe that one of the knife wounds went through one side of her forearm and out the other." The State then asked, "And based on your experience investigating these types of crimes, does that through-and-through wound suggest the type of force that was used to stab her?" Detective Christopher responded that it would take considerable force to stab through someone's arm. He then stated, "I wouldn't think it'd be something unintentional." Albiar's counsel objected that "based on that statement alone, it calls for speculation." The trial court overruled the objection.

On appeal, Albiar argues that Detective Christopher was speculating because he was not an expert on wound analysis and because he did not personally observe the stabbing incident. But any error in the admission of evidence is rendered harmless when the same evidence comes in elsewhere without objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). On cross-examination, Albiar's counsel asked Detective Christopher about his prior testimony on the amount of force it would take to cut someone "through-and-through": "[S]o when you talk about a through-and-through - - and this is - - I'm assuming this is based on your experience, as well as just a - - as an officer, as well as a common person who I'm

8

assuming that's dealt with knives and cuttings before, whatever - - whatever it is." Counsel asked Detective Christopher further questions on "through-and-through" cuts and Rodriguez's injuries. Counsel then asked, "And so earlier when you were speaking on a through-and-through requires more force, then wouldn't it also make sense that if there was that amount of force, you know, especially in the chest area, one would think that the lacerations or the - - stabs would be deeper, correct?"

Albiar's counsel elicited testimony from Detective Christopher on "through-and-through" stab wounds generally. He further asked specific questions about the size of Rodriguez's wounds in relation to a "through-and-through" cut. Counsel asked Detective Christopher to give his opinion on "through-and-through" wounds based upon his experience as a police officer and as a person familiar with knives. We hold that any error in the complained-of speculative testimony on the amount of force required for a "through-and-through" wound was rendered harmless when Detective Christopher testified about "through-and-through" stab wounds on cross-examination. *See id.* We overrule the fourth issue.

### IV. CONCLUSION

Having overruled all of Albiar's issues on appeal, we affirm the trial court's judgment.

9

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 22, 2024