

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00295-CR

**TORIE EUGENE RICKS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2010-1531-C1

## MEMORANDUM OPINION

A jury convicted Appellant Torie Eugene Ricks of five counts of aggravated sexual assault of a child and assessed his punishment at life imprisonment for each count, to run consecutively. This appeal ensued.

### Extraneous Offenses

In his first issue, Ricks contends that the trial court reversibly erred by allowing the introduction of his extraneous offenses during his sister Andreka Jackson's testimony because he did not "open the door" to such matters.

Jackson testified that Ricks had been married to Sarah Carr for about five years and that they have two children together. When Sarah was not in jail, they were actually living as a family away from Sarah's family. Two of Sarah's other children would also live with them. The victim, another of Sarah's children, lived with Sarah's parents, but sometimes she would come and visit at the house. When Jackson visited the house, she would see Ricks taking care of his kids. He would cook, clean, and change diapers. Ricks and Sarah did not share the responsibilities equally. It seemed like Ricks would be doing more work. As far as Jackson saw, Ricks took a primary role in taking care of the kids. He also worked.

On cross-examination, the State asked if Jackson was basically there to testify that her brother is a good father. Jackson replied, "Yes." The State then asked Jackson if, during this time when she is suggesting that her brother is having a happy family life, he was actually committing several crimes. Jackson replied that she was not aware of that. At that point, Ricks objected based on relevance.

Outside the presence of the jury, the State argued that Jackson's testimony created a false impression and that it should be able to correct that false impression by asking Jackson if she was aware that Ricks had committed several crimes during this "rosy period" that she had described. Ricks responded that Jackson's testimony was actually offered to rebut the testimony of John Carr, Sarah's father, "who basically said he didn't work, he was a freeloader, he had nowhere to go, [and] he didn't support himself." After further discussion, the State proposed limiting its questioning to the time when Ricks and Sarah had been together because Jackson's testimony had been

limited to that time frame.  The trial court ultimately overruled Ricks's objection, gave him a running objection, and allowed the State to question Jackson about the specific instances of conduct during the period of time that Ricks and Sarah were involved in their relationship.

After the jury returned, the State then asked Jackson if she was aware that Ricks had been committing crimes and had been sent to jail during the period of time about which she had testified.  The State asked Jackson if she was aware that in 2005 Ricks had committed the offense of theft and had been sentenced to one year in jail.  The State also asked Jackson if she was aware that in 2006 Ricks had committed another theft and was sentenced to 120 days confinement.  Finally, the State asked Jackson if she was aware that in 2005 Ricks had lied about his name to a police officer and committed the offense of failure to identify while a fugitive from justice and was sentenced to six months in jail.

To preserve a complaint about admitting evidence, a party must make a proper objection and get a ruling on that objection.  TEX. R. APP. P. 33.1; *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (citing *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)).  However, "[a]n error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection."  *Id.  See also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").  "This rule applies whether the other evidence was introduced by the defendant or the State."  *Leday*, 983 S.W.2d at

718.

In this case, Ricks testified in his own defense, during which the following exchange occurred between him and his trial counsel:

Q. I'm going to talk first about some things that are a little bit probably uncomfortable. You've been in trouble with the law before. Is that correct?

A. Yes, ma'am, I have.

Q. And let's start about 16 years ago. You were convicted of a robbery. Is that right?

A. Yes.

Q. And where was that conviction from?

. . . .

Q. . . . Was it in McLennan County?

A. Yes, ma'am.

Q. Okay. And did you plead guilty to that offense?

A. Yes, ma'am, I did.

Q. And what kind of sentence did you receive for that?

A. I received a five-year sentence.

Q. And did you do some time in prison?

A. Yeah. Five years.

Q. Okay. And you've also been convicted of theft several times; in fact, a total of five times of misdemeanor theft. Is that correct?

A. Yes, ma'am.

Q. And you did various jail sentences for those thefts. Is that

correct?

> A. Yes, ma'am.

> Q. And on one occasion -- and I know that this has already come in through the State's cross-examination of your wife -- I'm sorry -- of your sister -- you were convicted of giving a false name to a police officer. Is that right?

> A. Yes, that's right.

On cross-examination, the State also impeached Ricks with his prior convictions. Thus, error, if any, in allowing the introduction of his extraneous offenses during Jackson's testimony was cured when the same evidence was admitted without objection during Ricks's testimony. We overrule Ricks's first issue.

**Assessment of Fees**

In his second issue, Ricks contends that the evidence was insufficient for the trial court to require him to pay investigator and court-appointed attorney's fees as court costs.

The clerk's record includes a bill of cost listing the various fees assessed against Ricks in this case and totaling $934. One of the fees is a court-appointed attorney fee in the amount of $100. The trial court signed five judgments in this case, one for each count for which Ricks was convicted. In the judgment for Count I, the trial court assessed court costs in the amount of $834. In the "Court Costs" section of the judgments in Counts II through V, the trial court stated, "See Count I." Also incorporated into each of the judgments is an order to withdraw funds from Ricks's inmate account in the amount of $934, payable to the McLennan County District Clerk.

In order to assess attorney's fees and investigator's fees as court costs, the trial court was required to determine that Ricks had financial resources that would enable him to offset in part or in whole the costs of legal services provided. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2012). The clerk's record reflects that, before trial, the trial court found that Ricks was indigent and appointed an attorney to represent him in this case. Once Ricks was initially found to be indigent, he was presumed to remain indigent for the remainder of the proceedings unless it was shown that a material change in his financial resources had occurred. *See id.* art. 26.04(p) (West Supp. 2012).

The State concedes in this case that there is insufficient evidence to support the assessment of court-appointed attorney's fees and investigator's fees against Ricks. The trial court did not make any fact-findings or otherwise address Ricks's financial condition again before signing the judgments. Furthermore, after signing the judgments, the trial court appointed an attorney for purposes of appeal because Ricks desired to appeal his conviction but "[did] not have sufficient funds to employ an attorney." Therefore, we conclude that the evidence was insufficient for the trial court to have ordered Ricks to pay his attorney's fees and investigator's fees. *See Mayer v. State*, 309 S.W.3d 552, 555-56 (Tex. Crim. App. 2010).

Ricks first requests that the "judgment" be reformed to delete the erroneous order of costs. The trial court in assessing the court costs in the Count I judgment appears, however, to have already deducted the court-appointed attorney fee of $100 from the amount. Therefore, we need not reform the Count I judgment. And because

in the "Court Costs" section of the judgments in Counts II through V, the trial court merely stated "See Count I," we need not reform those judgments.

Ricks also requests that "the order to Texas Department of Justice Inmate Trust Account for payment of the fees from Mr. Ricks' trust account should be removed." The orders to withdraw funds incorporated into the judgment for all five counts are in the amount of $934, which includes the court-appointed attorney fee in the amount of $100; therefore, the orders should be modified to the amount of $834.

Ricks's second issue is sustained in part and overruled in part.

## Conclusion

We reverse in part the trial court's judgments to the extent that they each include an order to withdraw funds that includes a court-appointed attorney fee. We remand this case to the trial court to reform the judgments as set forth above. We affirm the remaining portions of the trial court's judgments.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed in part, reversed and remanded in part
Opinion delivered and filed July 25, 2013
Do not publish
[CRPM]