**Affirmed and Memorandum Opinion filed May 2, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00103-CR

### STANLEY LESHAWN MACON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1453303**

## M E M O R A N D U M   O P I N I O N

Appellant Stanley LeShawn Macon was charged with continuous family violence for committing two acts of assault within twelve months against women with whom he had dating relationships. The jury convicted him of the lesser offense of assault, and appellant appeals the conviction on the ground that the trial court violated appellant's rights under the Confrontation Clause by admitting part of the recording of a 911 call by an outcry witness who did not appear at trial. We conclude

that any error in the admission of this evidence was harmless beyond a reasonable doubt. Thus, we affirm the conviction.

## I. BACKGROUND

Appellant was indicted for the March 1, 2014, assault of Carla Brantley and the December 27, 2014, assault of Antonisha Montgomery. Because the trial court's alleged error pertains only to the alleged assault of Montgomery, we summarize the evidence pertaining to Brantley only briefly.

### A. Complainant Carla Brantley

Brantley testified that on her second date with appellant, the two went to a restaurant in her car, then stopped at a store before Brantley drove appellant back to his apartment. Brantley stated that when they arrived at appellant's home in the early morning hours of March 1, 2014, appellant pulled her out of the car, causing her to fall and injure her shoulder. Brantley stated that when she stood, appellant began pushing her to his door and punching her in the back of the head. Inside the apartment, appellant allegedly punched Brantley in the eye and took her keys, then went to Brantley's car and retrieved her purse and phone. According to Brantley, appellant kept her locked in his apartment for over two days, letting her go at 6:00 a.m. the following Monday. Brantley immediately called her brother and the police, who met her at her house. Both she and appellant gave statements to the police, and a recording of appellant's statement was played for the jury. According to appellant, he did not hold Brantley against her will, and her bruises were sustained from her own lack of coordination while intoxicated. Appellant's counsel argued that Brantley, who is a certified nurse assistant, injured her shoulder while lifting patients.

2

**B.      Complainant Antonisha Montgomery**

Montgomery testified that she met appellant in April 2014 and that she and her daughter moved in with appellant in early December 2014.   Montgomery testified that on Saturday, December 27, 2014, she was making dinner when appellant, who had been drinking, said that Montgomery was not listening to him and struck her face.  When Montgomery began to clean up a drink that had spilled on the floor, appellant twisted her arm until she screamed, then began kicking her. Montgomery stated that she stood and tried to continue making dinner, but appellant began punching her in her ribs and stomach.   Montgomery fell, and appellant allegedly began stomping on her legs, arms, and stomach.    According to Montgomery, appellant then put a gun to her head and said, "I should blow your brains out.  I should kill you."

Montgomery testified that the next day, the left side of her face was swollen; her vision was blurry; she was dizzy; and she could barely walk.  She stated that appellant had to help her in and out of the bathtub.  On the second day after the assault, she told appellant that she was in pain and had difficulty breathing, but he insisted that she cook for him.  Montgomery testified that all that day appellant remained in the apartment and "continued to tell me that I was a dumb B and that he could have blown my brains across that kitchen floor and that it was my fault."

On Tuesday, December 30, 2014, Montgomery knew appellant had a physical-therapy appointment.  She testified, "I knew Tuesday was my out and if I was ever going to get out, it was going to have to be Tuesday."  She called her cousin Melody Lowery in Humble for help but warned Lowery that appellant had a gun. Montgomery testified that she was afraid for her safety, but she also was afraid of what appellant would do to her cousin if appellant caught Montgomery trying to leave.  She concluded that "he would have to be gone in order for me to leave."

3

Lowery traveled to Houston and waited "around the corner" from appellant's apartment. When appellant left the apartment again that day, Montgomery called Lowery. Lowery and their friend Arnecia Simmons picked Montgomery up from appellant's apartment and drove her to the parking lot of some adjacent apartments. Both Lowery and Simmons called 911, but Lowery hung up after Simmons began speaking with the dispatcher.

Lowery testified that when she saw Montgomery, Montgomery "had a lot of bruises, broken ribs, torn clothes, just really beaten really bad." Lowery further stated that Montgomery could not walk normally and had to be helped into the car. Officer Soren Nguyen, who responded to the call, similarly testified that Montgomery "was hurt really bad" and had "bruises all over her body, her eyes and then she [was] saying her ribs are hurt." Nguyen called for medical assistance, and the responding emergency medical personnel told Montgomery that she needed to be seen in an emergency room, but Montgomery decided to defer going to the hospital. When she did go to the emergency room on January 1, 2015, she was found to have two broken ribs.

## C. The Challenged Evidence

Simmons did not testify at trial, but a portion of her 911 call was played to the jury over appellant's objection that admitting this evidence violated his rights under the Confrontation Clause. The jury convicted appellant of the lesser offense of assault, and the trial court sentenced him to one year's confinement in the county jail. Appellant appeals his conviction on the ground that the trial court committed harmful constitutional error in overruling his objection to the redacted recording played for the jury.

4

## II. THE CONFRONTATION CLAUSE

The Sixth Amendment's Confrontation Clause provides that a defendant in a criminal prosecution "shall enjoy the right . . . to be confronted with the witnesses against him." *See* U.S. CONST. amend. VI. This right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36, 50–52 (2004). If the statement is testimonial, then the evidence is inadmissible unless the witness who made the statement either (a) takes the stand to be cross-examined at trial, or (b) is unavailable, and the accused had a prior opportunity to cross-examine the witness. *Id.*, 51 U.S. at 54, 124 S. Ct. 1354, 158 L. Ed. 2d 177. Because Simmons did not appear at trial and appellant had no prior opportunity to cross-examine her, neither exception applies in this case. The State argues that the statements were non-testimonial, relying on *Davis v Washington*, 547 U.S. 813, 822 (2006).

If evidence is erroneously admitted during the guilt-or-innocence phase of the trial in violation of the accused's rights under the Confrontation Clause, we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* TEX. R. APP. P. 44.2(a); *Woodall v. State*, 336 S.W.3d 634, 639 n.6 (Tex. Crim. App. 2011); *Davis v. State*, 203 S.W.3d 845, 852–53 (Tex. Crim. App. 2006). To make that determination, we consider (a) the importance of the out-of-court statement to the State's case, (b) whether the out-of-court statement was cumulative of other evidence, (c) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points, and (d) the overall strength of the prosecution's case. *See Davis*, 203 S.W.3d at 852. We also may consider (e) the source and nature of the error, (f) the extent to which the State emphasized the erroneously admitted out-of-court statement, and (g) "how weighty the jury may have found the erroneously admitted evidence to be

compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant." *Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007). Any error in the admission of evidence "is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

We need not decide which of Simmons's recorded statements, if any, were testimonial, because on the record before us,[1] we conclude beyond a reasonable doubt that the content of the 911 call played to the jury did not contribute to appellant's conviction. We begin with the content of Simmons's statements.

After Simmons answered the dispatcher's questions about her name, phone number, and location, Simmons and the dispatcher had the following exchange, often speaking at the same time:

Dispatcher: What is the emergency?

Simmons: My friend has been severely beat up—

Dispatcher: Okay.

Simmons: —by her boyfriend and her cousin and I had to go over there and go get her from over there. He had a—he has a gun. He beat her up half to death and told her not to move—

*Simultaneously:*
        Dispatcher: Okay, and so she was—she was—

---

[1] Although appellant's brief included a "dropbox" hyperlink to the unredacted 911 calls, we have not considered that material because it is not part of the record. *See* TEX. R. APP. P. 34.1. We instead rely on the record, which contains audio files of the recordings played to the jury.

6

Simmons: —so when he left, she called her cousin to come get her—

Dispatcher: One moment. So she was assaulted by the boyfriend and a relative of hers?

Simmons: She was assaulted by her boyfriend.

Dispatcher: And, uh, you said a cousin as well?

Simmons: Her, no, her cousin came and picked her up—

*Simultaneously:*
Dispatcher: Oh, okay. Okay, is she awake right now?
Simmons: —because he had told her —

Simmons: She's awake, she's alert—

*Simultaneously:*
Dispatcher: Okay. We—we're—okay, ma'am—ma'am—
Simmons: —but she can't see hardly, and she's bending over like, she said her ribs hurt.

Dispatcher: —ma'am, okay, I need you to listen please. We are dispatching emergency to 10211 Sugar Branch in the parking lot of Forum Park Three apartments. Is this correct?

Simmons: Yeah.

After obtaining information to locate Simmons' specific location in the parking lot, the dispatcher resumed his inquiry:

Dispatcher: Okay. Was anyone sexually assaulted?

Simmons: She wasn't sexually assaulted.

Dispatcher: When did this occur? How long ago?

Simmons: Um, this happened yesterday. This happened last night.

Dispatcher: So does she need medical right now for this?

Simmons: Yes. He held her against her will—

> *Simultaneously:*
>> Dispatcher:  I'm saying— okay, no—
>> Simmons:    He put a gun to her head—

> Dispatcher:  —no, I'm not asking you that right now.  I'm asking when did, when was she assaulted?  Last night?

> Simmons:    She was assaulted last night.

> Dispatcher:  Okay.  And she needs medical right now, correct?

> Simmons:    Yes.

> Dispatcher:  Okay.

> Simmons:    Yes.

The dispatcher gave Simmons instructions about monitoring Montgomery's condition, then asked,

> Dispatcher:  Did—is he there or did he leave?

> Simmons:    No, uh, what happened was that, uh, she—

> *Simultaneously:*
>> Dispatcher:  Is he there or— or did he—
>> Simmons:    —he left— No.  He—

> Dispatcher:  He left?

> Simmons:    He left.

> Dispatcher:  Okay.

> Simmons:    We're in the apartments next door to where she was.

> Dispatcher:  Do you—

> Simmons:    We're not even in the apartment.

> Dispatcher:  Do you know, do you know where he's at?

> Simmons:    Yes.  I do.

> Dispatcher:  Okay. Okay, then, we have the help on the way there. Okay?

Simmons:     Okay.

The two then thanked each other and said good-bye.

Many of the statements could have played no role in the outcome of the trial because they are irrelevant to any element of the offense or to any defensive issue. Appellant was indicted for the offense of continuous violence against the family. *See* TEX. PENAL CODE ANN. § 25.11. A person commits continuous violence against the family if, during a period of no more than twelve months, "the person two or more times engages in conduct that constitutes [assault] under Section 22.01(a)(1) against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code." *Id.* § 25.11(a). A person commits assault under section 22.01(a)(1) of the Penal Code if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." *Id.* § 22.01(a)(1). A person's relationship with the defendant is encompassed by Texas Family Code section 71.0021(b) if they have a dating relationship, defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b). A person's relationship with the defendant falls within the scope of Texas Family Code section 71.005 if they are members of the same household, defined as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." *Id.* § 71.005.

Simmons's statements concerning her name, address, phone number, and specific location at the time of her 911 call could have played no role in appellant's conviction because the statements do not make it more or less probable that appellant committed assault, or that he acted with the requisite intent, or that Brantley or Montgomery was injured, or that appellant was in a dating relationship with either woman, or that either woman was a member of appellant's household. The same is

9

true of Simmons's statements that Montgomery was not sexually assaulted; that appellant had left; and that she knew appellant's location. Even Simmons's statements to the effect that Montgomery was beaten on Monday rather than on Saturday could not have affected the verdict; it is immaterial whether appellant's alleged assault of Montgomery occurred on December 27, 2014, or December 29, 2014, because both dates are within twelve months of his alleged assault of Brantley on March 1, 2014.

Any error in admitting the remainder of Simmons's statements was cured when the substance of those statements was admitted without objection through other witnesses or documents. Simmons reported that appellant held a gun to Montgomery's head, and that Simmons and Lowery had picked up Montgomery from appellant's home, but appellant did not object when Montgomery testified to the same facts. Simmons stated that appellant told Montgomery not to move and held Montgomery against her will, and although Montgomery denied saying as much, her medical records, which were admitted without objection, similarly recount that Montgomery "was assaulted on [S]aturday and held against her will by her boyfriend, until [T]uesday when she was able to escape." Simmons described Montgomery as having been "severely beaten" or "beaten half to death," and although the State was required to prove only the existence of bodily injury rather than its extent, Montgomery, Lowery, and Nguyen all testified to the severity of Montgomery's beating, which was additionally documented in Montgomery's photographs and her medical records. All of this evidence was admitted without objection.

Given that any error in admitting the challenged statements was either immaterial or cured, it is unnecessary to address at length the remaining factors to be considered. Briefly, then, the duplication of evidence described above not only

10

corroborates Simmons's statements but also demonstrates that Simmons's statements were cumulative of other evidence. The State did not emphasize Simmons's statements; it never mentioned them. Indeed, there was no reason to do so, because weightier evidence of Montgomery's injuries was admitted without objection; Simmons's statements were subject to the jury's credibility determination, but Montgomery's photographs and medical records objectively documented her injuries.

For all of the above reasons, we overrule the sole issue presented.

### III. CONCLUSION

Because we conclude beyond a reasonable doubt that appellant was not harmed by any error in admitting a portion of Simmons's 911 call, we affirm appellant's conviction for assault.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Hassan, and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b).

11